# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1667

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Francisco Garate, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: January 11, 2007
Filed: April 3, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Francisco Garate pled guilty to two counts of travel with intent to engage in sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). The district court calculated an advisory guideline sentence of 57 to 71 months, determined a variance would be appropriate under 18 U.S.C. § 3553(a), and sentenced Garate to 30 months. The government appeals the sentence as unreasonable. We reverse and remand for resentencing.

Garate was a nineteen year old man living in Long Beach, California when he met a twelve year old girl through an internet chat room in March 2002. She resided in Davenport, Iowa with her family. Garate began communicating with her regularly

over the internet and the telephone. The girl initially represented that she was eighteen, but Garate learned from her father in June 2003 that she was only thirteen years old. The father had intercepted a late night call from Garate after discovering what he thought was an inappropriate email conversation on his daughter's computer. The father warned Garate to stop communicating with his daughter. Garate complied at first, but the girl and he later resumed contact and planned a meeting.

Garate arranged to travel to Iowa to meet with the girl in June 2004. At that time he was twenty one years old and knew that she was fourteen. Garate flew to Iowa, rented a car, picked the girl up and took her to an EconoLodge in Bettendorf, Iowa, a town near Davenport, where she performed oral sex on him. He showed her a $500 ring which he had brought with him and told her he wanted to marry her, but they agreed he should take the ring back to California so her parents would not find it. The two continued to communicate by internet and telephone, and Garate planned another trip to Davenport.

On September 17, 2004 the victim's[1] father discovered from a telephone bill that Garate had been continuing to carry on phone conversations with his daughter. He telephoned Garate and told him to stay away from his daughter and threatened to

---

[1]Although we use the term "victim" to refer to the minor girl, the definition of that term in the guidelines and the Crime Victim's Rights Act would include her parents:

> the term "crime victim" means a person directly and proximately harmed as a result of the commission of a Federal offense . . . . In the case of a crime victim who is under 18 years of age, . . . the legal guardians of the crime victim . . . may assume the crime victim's rights under this chapter.

18 U.S.C. § 3771(e). Section § 3771(a)(4) provides that a victim has the right "to be reasonably heard at any public proceeding in the district court involving . . . sentencing."

contact the county attorney about his improper conduct. Even though Garate was then on his way to Iowa to meet the victim, he made no mention of his plan but assured the father that the two only talked to each other and had no physical relationship. On arrival in Davenport, Garate picked up the victim and took her directly to the Bettendorf EconoLodge where the two had oral, anal, and vaginal sex.

That same night the victim's father called the home of the friend where she was supposedly staying overnight and discovered she was not there. He telephoned Garate's cellular phone number several times after realizing his daughter was missing. On the first call he left a voice mail message telling Garate to return his daughter at once; he continued to call the cell phone throughout the night but never reached Garate because his phone had been turned off. The father went to the police station to file a missing person's report and told officers he suspected his daughter was in the company of an adult male. The police searched the victim's bedroom and inside a closed envelope they found a photograph from Garate's first visit showing him and the victim outside the EconoLodge. One of the officers recognized the motel, and the police went there and located the room Garate had rented. They found him in the room with the victim and arrested him. Garate waived his Miranda rights and admitted that he had had oral, anal, and vaginal sex with the victim in the motel. Garate also told the officers that he had been communicating with the victim for nearly three years. She was taken to a hospital where she underwent a sexual assault exam.

Garate was indicted on two counts of travel with intent to engage in sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b), and one count of inducement and coercion of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). He pled guilty to the travel charges, and the government agreed to move to dismiss the other charge.

At the sentencing hearing Garate's mother testified that he lived with her and that he was shy and insecure about his appearance. She stated that he had been a

responsible son who was close to receiving a college degree and was employed. She also testified that he had had a girlfriend in California and that he had a close relationship with his married brothers. The victim's father testified that he had twice told Garate to stop communicating with his underage daughter and that Garate's actions had had a traumatic effect on his family. He explained that his daughter was so shy she was unable to order food at McDonald's. He described the night his daughter went missing as "24 hours of hell" and a "nightmare," and related that the family panicked. He feared that she had been abducted, assaulted, and killed because as a former law enforcement officer he was familiar with cases with bad endings. He felt Garate was a predator because he had been warned that pursuing a relationship with the girl was wrong but chose to continue anyway.

Garate's base offense level was set at twenty four. The district court found that Garate had used his greater resources and persuasion to gain the victim's trust and attachment, and it applied a two level enhancement under the applicable guidelines for "unduly influenc[ing] the minor to engage in prohibited sexual conduct," U.S.S.G. § 2A3.2(b)(2)(B). Another two levels were added for using the internet to persuade a minor to participate in sexual activity. U.S.S.G. § 2A3.2(b)(3). With a three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a),(b), Garate's total offense level was twenty five. Combined with his criminal history category I, the resulting advisory guideline range was 57 to 71 months. Garate asked the court to depart downward on the basis of aberrant behavior and to sentence him between 24 and 36 months. The court responded that aberrant behavior would be more appropriately considered with the sentencing factors in 18 U.S.C. § 3553(a).

The district court imposed a nonguidelines sentence of 30 months. In arriving at its decision it relied "foremost" on Garate's "very young age" and cited a study finding men under the age of twenty five more likely to commit criminal acts because of cultural and environmental influences. The district court noted that the offenses were Garate's first criminal conduct and found that he had a supportive family and

otherwise lived a responsible life. Although Garate had exercised "terrible judgment", the court found he was less likely to reoffend than many others who commit such offenses. In the court's opinion the collateral consequences of being convicted, such as potential residential restrictions and requirements to register as a sex offender, would be more serious punishment for Garate than his imprisonment.

On its appeal the government argues that Garate's sentence is unreasonable because the district court failed to weigh significant factors properly and gave too much weight to discouraged factors. We review whether the district court's sentence was reasonable in light of the factors outlined in 18 U.S.C. § 3553(a). United States v. Goody, 442 F.3d 1132, 1134 (8th Cir. 2006). Our review for reasonableness is similar to a review for an abuse of discretion. United States v. Mashek, 406 F.3d 1012, 1017-18 (8th Cir. 2005). A sentence is unreasonable if the sentencing court "fail[ed] to consider a relevant factor that should have received significant weight," gave an improper or irrelevant factor substantial weight, or committed a "clear error of judgment" in imposing a sentence outside the advised range suggested by the facts of the case, even if the factors relied upon are relevant under § 3553(a). United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984).

In granting the variance the district court relied in large part on Garate's age. The defendant's age is not relevant in determining whether a guidelines departure is warranted, U.S.S.G. § 5H1.1, but it is a factor that may be considered under § 3553(a)(1). Nevertheless, the factor of age should not be given undue weight. See United States v. Gall, 471 F.3d 876, 879 (8th Cir. 2006) (significant variance based largely on defendant's young age and lack of criminal history an abuse of discretion). There was no evidence that Garate had not understood that a sexual relationship with a child was wrong. Although he was in his early twenties, Garate was an adult from the onset of his contact with the victim. He was twenty one years old at the time of his two trips to Iowa to engage in various sexual acts with the then fourteen or fifteen

year old girl. Under Iowa law, Iowa Code § 709.4(2)(c)(4), she was incapable of consenting to any type of sexual relations with him. The six year age difference between Garate and the victim was a relevant factor that should have been given significant weight, and the sentencing court apparently did not consider whether Garate's adult age was more of an aggravating factor under these circumstances than a mitigating one.

Although the court cited a study about young males being more likely to engage in criminal conduct, it did not explain why any such propensity for criminal activity would support the sentence it imposed. In contrast to the study's presumption that men of Garate's age lack maturity, some sophistication was shown by his coordinated travel planning for the trips to Iowa, the type of sexual activity engaged in, the use of condoms, and the promise of marriage and a diamond ring. See Gall, 446 F.3d at 890 (improper reliance on study showing lack of maturity of persons under eighteen). We conclude that the district court gave undue weight to Garate's age in relying "foremost" on it to impose a 30 month sentence.

The district court also placed undue weight on Garate's lack of criminal history before the instant offenses. Criminal history may support a variance as part of the defendant's history and characteristics under § 3553(a)(1), United States v. Myers, 439 F.3d 415, 418 (8th Cir. 2006), but primary reliance on factors already considered by the guidelines will not support a substantial variance unless they are present in unusual degree. See United States v. Plaza, 471 F.3d 876, 879-80 (8th Cir. 2006) (similar variance an abuse of discretion when court relied on factor already accounted for in the guidelines, the defendant's youthful age, and other factors). Garate's advisory guideline calculation was based on the lowest criminal history category, which accounted for his lack of prior criminal behavior. Here, the district court varied substantially from the advisory guideline range of 57 to 71 months. As we have pointed out elsewhere, "substantial variances based upon factors already taken into account in a defendant's guidelines sentencing range seriously undermine sentencing

uniformity" and conflict with the sentencing goals set by Congress. United States v. McDonald, 461 F.3d 948, 954 (8th Cir. 2006) (substantial variance for unlikelihood of recidivism unwarranted because guidelines already account for factor). We conclude the district court placed unwarranted weight on Garate's lack of criminal history in imposing a substantial variance when it was already accounted for by his criminal history category I.

The variance was also based on the assumption that the collateral consequences of Garate's offenses would be more serious punishment than his imprisonment. Public policy favors such restrictions, and they are common for all convicted sex offenders. These consequences are for the protection of the public and they do not make Garate's case unusual or merit significant weight in his sentencing. A substantial variance based on these factors helped contribute to an unwarranted sentencing disparity compared to other offenders who commit similar offenses. See 18 U.S.C. § 3553(a)(6).

There were other factors deserving of significant weight but not considered at sentencing. First were the injuries Garate's offenses caused the girl and her parents. See United States v. Little Hawk, 449 F.3d 837, 841 (8th Cir. 2006) (victim's injuries properly considered under 18 U.S.C. § 3553(a) factors). The girl had to undergo invasive medical procedures as a result of her involvement with Garate, and the father's testimony revealed the parents' anguish when their daughter was missing and their concern about the impact of Garate's offenses on her. In addition as the presentence report pointed out, the record suggests that recidivism might be expected since Garate did not cut off relations with the girl after being warned that a physical relationship with her would be illegal and that her father intended to contact the authorities. See United States v. Schwalk, 412 F.3d 929, 934 (8th Cir. 2005) (offenses indicating defendant's incorrigibility may be relevant to determining potential for recidivism).

In sum, we conclude that in sentencing Garate the district court failed to consider several factors which should have received significant weight and gave undue weight to others. The resulting 30 month sentence was unreasonable under all the circumstances. Accordingly, we vacate Garate's sentence and remand for resentencing.

_____