# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-3781/3886

_____

United States of America,            *

                                    *

      Appellee/Cross-Appellant,    *

                                    *   Appeals from the United States

    v.                            *   District Court for the

                                    *   Southern District of Iowa.

Lester John White, Jr.,          *

                                    *

      Appellant/Cross-Appellee.    *

_____

Submitted: June 12, 2007
Filed:  November 2, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Following a bench trial, the district court[1] found Lester White, Jr., guilty of receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252(a)(4), and sentenced him to a term of imprisonment of seventy-two months.  White appeals his convictions contending the evidence was insufficient.  He also appeals his sentence contending the district court improperly imposed two sentencing enhancements when calculating the advisory guideline range of 108 to 135 months.  The government cross

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

appeals the district court's downward variance from the advisory guideline range. We affirm.

I

On December 20, 2001, an employee of the Iowa Department of Human Services (DHS), opened an anonymous letter containing a photograph of a naked female child and a male penis. The back of the image contained an inscription purportedly identifying the female child (hereinafter A.M.) and indicating A.M.'s mother took the photograph. The letter included A.M.'s address, and the photo implied A.M.'s father was the man in the picture. The photo was immediately turned over to a DHS child intake worker for investigation. The same day, United States Postal Inspector Kevin Marshall received a call from DHS about the mailing and met with Osceola, Iowa, police officer Charles Beeker to begin an investigation into the matter. After going to A.M.'s school and meeting her, Inspector Marshall thought the image was similar to the little girl, but was not convinced it was her.

Inspector Marshall and Officer Beeker met with A.M.'s parents, who denied taking the picture and said the girl portrayed in the image was not their daughter. A.M.'s parents allowed the officers to search their home. No computers, cameras, or anything connecting the parents to the mailing was found. Due to previous disputes between themselves and White and his wife (the two couples had accused each other of child abuse on several occasions), A.M.'s parents suspected the photo had been sent by White.

Inspector Marshall determined the purported picture of A.M. was – as known in law enforcement circles – part of the "Heather" series of child pornography images and not A.M. On December 27, 2001, the Osceola police contacted Inspector Marshall and told him the city attorney had recently received a letter from White with

print and typing similar to the inscription on the back of the Heather picture sent to DHS. A warrant was then issued to search White's house.

On December 28, 2001, White was at his home when the search warrant was executed. White admitted to sending the Heather photo to DHS, claiming he had found it on his computer and thought it looked like A.M. He said he sent the photo anonymously because he had reported prior concerns to DHS about A.M.'s family, but those complaints had gone unheeded. He believed an anonymous report would get more attention.

White acknowledged the Heather picture was still on his computer. He provided step-by-step instructions on how to locate the Heather photo stored on his computer's hard drive. White admitted he saved the Heather photo to his computer, but had no explanation as to why he would need to save the image as proof when it was reported to DHS anonymously and no one could track it to him. White then told Inspector Marshall he would find other images of child pornography, besides the Heather picture, stored on the computer's hard drive. White again instructed the officers, step-by-step, on how to access a computer subfolder called "checking," which contained multiple images of child pornography.

A forensic analysis of White's computer revealed images of child and adult pornography. Additionally, the investigation uncovered two computer disks labeled "Adults Only. Keep Out!" and "XXX Newsgroup." White created both disks and admitted he created the "Girls" subdirectory on the latter disk. He told Inspector Marshall – verbally and in a written confession – he had downloaded the images of child pornography found on the hard drive. White admitted writing the "XXX" on the "XXX Newsgroup" computer disk, as well as "Photos from Newsgroup" inside the case holding the disk. White further admitted writing "Adults Only. Keep Out!" on the second computer disk, but claimed to have no idea what was on the disk. All told, the authorities discovered approximately fifty images of child pornography.

Much of the child pornography had been downloaded from Outlook Express Newsgroups to which White was a subscriber. The forensic examination revealed the computer had been used to subscribe to dozens of newsgroups, including pedophilia.box.dbx, pedophilia.girls.dbx, alt.pedophilia.pictures.dbx, and alt.sex.incest.dbx, among others. At one point White claimed the only thing on his computer were "adults-only materials," later claiming numerous family photos were on the computer. On both of the computer disks described above, no files other than child or adult pornography were found.

As a result of White mailing the Heather photo to DHS, A.M. was subjected to a physical examination and interview with officers to determine whether her parents were sexually abusing her. A.M.'s parents had their children taken away from them overnight.

A federal grand jury charged White in a three-count indictment with receiving, possessing, and distributing child pornography. Following White's waiver of his right to a jury trial, the government consented to a bench trial. At trial, White denied knowing about any child pornography on his computer, other than the Heather image, and denied showing the investigators the Heather photo on his computer. He also denied any knowledge of the two computer disks found during the search of his home. Following the bench trial, the district court found White guilty on all three counts of the indictment.

At sentencing, A.M.'s victim impact statement indicated she continued to suffer from the incident, such as being afraid to have her picture taken by a video camera, being embarrassed about going to the doctor, and having nightmares about White.

The district court calculated White's advisory guideline range as follows. Pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2G2.2 (2001),[2] the base offense level for White's offense conduct was seventeen. To this, the district court added

- a two-level enhancement under U.S.S.G. § 2G2.2(b)(1) because the Heather image distributed to DHS depicted a minor under the age of twelve years;

- a four-level enhancement under U.S.S.G. § 2G2.2(b)(3) because the Heather image portrayed sadistic or masochistic conduct (vaginal rape by an adult male);

- a two-level enhancement under U.S.S.G. § 2G2.2(b)(5) because a computer was used for the transmission of the pornographic material; and

- a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based on the district court's finding White's trial testimony was inconsistent with the statements he made at the time of the search of his home.

In addition, as relevant to the issues raised on appeal, the district court imposed

- a two-level enhancement under U.S.S.G. § 3A1.1 after determining A.M. was a vulnerable victim of the offense; and

---

[2]Due to ex post facto concerns, the district court used the guidelines manual effective November 1, 2001. Unless otherwise noted, all guidelines' references are to the guidelines manual effective November 1, 2001.

- a two-level enhancement under U.S.S.G. § 2G2.2(b)(2)(E) because the offense involved distribution of child pornography.

White's final advisory guideline range was 108 to 135 months (Offense Level 31 under Criminal History Category I). Absent the two enhancements White challenges on appeal, the advisory guideline range would have been 70 to 87 months (Offense Level 27 under Criminal History Category I).

White requested a downward variance from the advisory guideline range based on several factors, including his age, medical condition, lack of a criminal record, community service, and the fact he possessed relatively few images of child pornography and distributed just a single image. The government requested an upward variance based on the fact White used an image of child pornography to make a false report to DHS authorities in an attempt to frame A.M.'s parents for sexually abusing her. The district court denied the government's request for an upward variance, and granted White's request for a downward variance. In denying the government's request and granting White's, the district court considered the arguments made by both parties:

> The guidelines here – I've made every finding against the Defendant in favor of the Government with regard to the guideline calculations. Some of those were very close findings, but I think under the guidelines they are the correct finding.

> With regard to the Government's motion for upward departure, I find there's no basis for departure upward, and I will deny that motion. I think the conduct we're talking about here, while reprehensible, is adequately dealt with in the calculation of the guidelines. And what we're talking about is a guideline sentence of between nine and eleven years, which is going to be – whatever the sentence is, Mr. White is going to go to jail and spend a very significant part of his remaining life behind bars.

But I find in evaluating the conduct and the guideline calculation that a sentence at the low end of the guideline range is the appropriate guideline sentence. And my guideline sentence will be nine years, one hundred eight months. The remaining factor for me to consider is whether or not, then, there is a downward departure for consideration under 3553(a).

I think we all know the factors that I need to consider. I've already stated that although I recognize his community service as reflected in the record, I do not find that is a ground for any variance and will not consider that.

With regard to his variance, obviously, factors that were not recognizable as matters for departure under the guidelines can and should be evaluated in reaching a fair and equitable sentence to both the Defendant and the Government. And things like the Defendant's age, his minimal criminal record, his medical condition are factors that can and should be considered.

Mr. White is 51 years old. . . . At the present time, he does have a deteriorating medical condition between his diabetes, his high blood pressure, weakness in his extremities and difficulty in walking. And although I agree with the Government that medical conditions can and will be treated well in the Bureau of Prisons, they're still a factor in determining the appropriate length of sentence. All of these factors play into the Court's consideration of possible variance downward.

The big factor to me is to weigh the nature and circumstances of this offense. This is a very unusual offense. The distribution that we're normally talking about in this kind of case is one of distribution through a computer and sending images out across the internet to hundreds and perhaps thousands of other individuals.

We don't have that here. We have one – The distribution count is centered on one isolated event. Although very serious and damaging and traumatic, it was one isolated event. And I think that is important in evaluating a variance.

Counterproductive against that, of course, is the hateful nature of the event. I don't think you were doing it to protect the child, I think you were doing it as part of a vindictive action against the parents you were having strong disagreements with. So that counterbalances the extent of the departure, but I think – extent of the variance. But I still think there is grounds for a variance because of the nature of the distribution that occurred here.

Again, 50 images on the computer is extremely low, as far as I'm concerned. The typical case I have there are literally hundreds and often thousands of images located on the computer. And again, I think – although I recognize it's still a violation of the law to download any child pornography, obviously the amount of it has to factor into the psychological concern and problem that the individual has with regard to child pornography. And here I find the fact that there were only 50 images is an appropriate factor to consider in a downward variance[.]

Sent. Tr. 35-38.

White filed a timely appeal challenging the sufficiency of the evidence in support of the convictions, and further challenging the district court's use of the vulnerable victim enhancement under U.S.S.G. § 3A1.1 and the child pornography distribution enhancement under U.S.S.G. § 2G2.2(b)(2)(E). The government filed a timely cross appeal challenging the district court's downward variance, but did not cross appeal the district court's denial of the motion for an upward variance.

II

White contends the evidence was insufficient to support his convictions. When considering a sufficiency challenge, "we review the evidence in the light most favorable to the government and accept all reasonable inferences that support the jury's verdict." United States v. Allen, 440 F.3d 449, 450 (8th Cir. 2006). "In reviewing the sufficiency of the evidence after a bench trial, we apply the same

standard that we apply when reviewing a jury verdict." United States v. Vaughn, 410 F.3d 1002, 1004 (8th Cir. 2005). This court "may reverse convictions based upon insufficiency of the evidence only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime." United States v. Williams, 181 F.3d 945, 950 (8th Cir. 1999) (internal quotations and citations omitted).

A

The convictions for receipt and possession of child pornography turn on essentially the same requirements and evidence, and thus will be discussed together. The elements of receipt under 18 U.S.C. § 2252(a)(2) require the defendant to knowingly receive an item of child pornography, and the item to be transported in interstate or foreign commerce. The elements of possession under 18 U.S.C. § 2252(a)(4)(B) require the defendant to knowingly possess an item of child pornography, and the item to be transported in interstate or foreign commerce by any means.

White contests the evidence was insufficient to show he "knowingly" received and possessed child pornography. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).

In this case, the evidence was more than sufficient to support the district court's finding White knowingly received and possessed child pornography. Images of child pornography were found on White's computer. White admitted creating the two computer disks, and to creating the subdirectory "girls" which contained the images

of child pornography. In addition, White admitted writing the words "Photos from Newsgroups"on the inside cover of one of the two computer disks.

White claims he unknowingly transferred the child pornography from his computer to the disks he created while backing up his computer. White stated he transferred data to the disks in complete files and not image-by-image, and while he was transferring adult pornography to the "XXX" disk, he unknowingly transferred the child pornography. However, when Inspector Marshall asked if there was any child pornography on his computer, White admitted there was and provided step-by-step instructions for Inspector Marshall to locate the images. This evidence belies White's claim he was unaware of any child pornography existing on his computer's hard drive or the two computer disks he created.

Furthermore, White's computer reflected subscriptions to various child pornography-related newsgroups. White contends there were eight other individuals who had unfettered access to the family computer, and any one of those individuals could be responsible for the child pornography present on the computer. However, this does not explain how White himself was able to provide step-by-step instructions on accessing the child pornography on the computer.

With respect to the possession conviction, White argues 18 U.S.C. § 2252(c) should apply. Section 2252(c) sets forth an affirmative defense to a charge of possession if a defendant possesses less than three matters containing a visual depiction of child pornography, and

> promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof – (A) [takes] reasonable steps to destroy each such visual depiction; or (B) report[s] the matter to a law enforcement agency and afford[s] that agency access to each such visual depiction.

18 U.S.C. § 2252(c)(2)(A) - (B).

-10-

White is not entitled to the affirmative defense for several reasons. First, he possessed more than three images of child pornography. Second, he retained all of the images involved in the charged offenses, rather than taking reasonable steps to destroy them. Third, even assuming DHS was a "law enforcement agency" for purposes of the defense, White only provided DHS a copy of a single image of those involved to DHS, and by doing so anonymously did not afford DHS access to the visual depiction itself, which he retained. Finally, the affirmative defense requires a defendant to act in good faith. The district court rejected White's claim he sent the Heather image to DHS because he truly believed it depicted A.M. being sexually abused by her parents, and instead found White sent the image to DHS "as part of a vindictive action against [A.M.'s] parents." This does not constitute good faith. In sum, White did not meet any requirements of § 2252(c)'s affirmative defense.

B

We next discuss the sufficiency of the evidence in support of the distribution conviction. White does not dispute his act of mailing the Heather photo to DHS constitutes "distribution" of child pornography under 18 U.S.C. § 2252(a)(2), but rather contends that holding him "legally accountable for this 'distribution' would undermine Iowa's child abuse reporting procedures and overstep the purpose of the distribution statute." We disagree. White's contention is premised on his claim he sent the image to DHS out of concern for A.M. The district court rejected this claim, finding White's conduct was a vindictive act against A.M.'s parents. The evidence supports the district court's findings. We fail to see how holding White accountable for his attempt to frame A.M.'s parents with a false report of child abuse will undermine Iowa's child abuse reporting procedures or overstep the purpose of the federal statute.

-11-

III

White challenges his sentence by claiming the district court improperly calculated the advisory guideline range. We review this challenge de novo. United States v. Grindberg, 470 F.3d 758, 760 (8th Cir. 2006). Any findings of fact the district court made to support its calculation of the advisory guideline range are reviewed for clear error. Id.

A

White argues the district court improperly applied a two-level enhancement under U.S.S.G. § 3A1.1. White argues § 3A1.1 does not apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." U.S.S.G. § 3A1.1 cmt. n.2 (2001). White contends the vulnerable victim factor was already incorporated in his offense guideline because he received a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(1) (2001) which applies when "the material involved a prepubescent minor or a minor under the age of twelve years."

The district court based the § 3A1.1 enhancement on A.M.'s victimization and vulnerability, while the § 2G2.2(b)(1) enhancement was based on age of the child depicted in the Heather image. It was not improper for the district court to impose the § 3A1.1 enhancement based on A.M.'s age-related vulnerability, while also imposing the § 2G2.2(b)(1) enhancement based on the age of the child depicted in the Heather image, because the enhancements were based on two separate victims. The factors that made A.M. a vulnerable victim under § 3A1.1 were not taken into account in the age-related enhancement White received under § 2G2.2(b)(1).

-12-

White further contends A.M. was not a victim of his conduct. White's conduct, however, caused A.M. to be taken out of school by police officers and questioned about whether her father had sexually abused her. White's conduct resulted in A.M. being subjected to a physical examination to determine whether she was the victim of sexual abuse. A.M. and her siblings were removed temporarily from their parents' custody. A.M.'s victim impact statement indicates she is afraid to have her picture taken by a video camera, is embarrassed about going to the doctor, and has nightmares about White. Based on this record, the district court did not clearly err in finding A.M. was a victim of White's criminal conduct.

B

White also contends the district court improperly applied a two-level enhancement under U.S.S.G. § 2G2.2(b)(2)(E) for distribution of child pornography. Under § 2G2.2(b)(2)(E), a two-level enhancement applies whenever "[d]istribution other than distribution described in subdivisions (A) through (D)" occurs. Subdivisions (A) through (D) set forth higher level enhancements when the distribution is for such things as pecuniary gain (at least five levels), in exchange for something of value other than money (five levels), to a minor (five levels), or to a minor in an attempt to have the minor engage in prohibited sexual conduct (seven levels). See U.S.S.G. § 2G2.2(b)(2) (2001). In other words, at a minimum, a two-level enhancement applies whenever distribution is involved, with the possibility of higher enhancements when certain aggravating factors are present. Because White's conduct involved distribution, but did not involve any of the aggravating factors set forth in subdivisions (A) through (D), the district court properly applied the minimum two-level enhancement under subdivision (E). White's contention the enhancement was improper is meritless.

The government's cross appeal challenges the district court's downward variance from the advisory guideline range. "We review a district court's variance from the advisory guidelines range under a reasonableness standard that is similar to an abuse of discretion review." United States v. Pool, 474 F.3d 1127, 1129 (8th Cir. 2007) (citing United States v. Plaza, 471 F.3d 876, 878 (8th Cir. 2006)). An abuse of discretion may occur "if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005). In reviewing whether the district court's variance fell outside the range of choice dictated by the facts of the case, we are mindful of the fact that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." Rita v. United States, 127 S. Ct. 2456, 2469 (2007).

The government first contends White's sentence was unreasonable because the district court based the variance in part on some factors ordinarily considered irrelevant in calculating the advisory guideline range, namely, White's age and medical condition. This argument is not well-taken. Under the post-Booker[3] advisory guideline regime, district courts are not only permitted, but required, to consider "the history and characteristics of the defendant." 18 U.S. C. § 3553(a)(1). This mandate includes consideration of a defendant's age and medical condition. See United States v. Ryder, 414 F.3d 908, 920 (8th Cir. 2005) (finding Booker error and remanding for resentencing where the district court believed it was without discretion to vary from the guidelines based on the defendants' health and ages); see also United

---

[3]United States v. Booker, 543 U.S. 220 (2005).

States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (concluding the district court properly anticipated Booker by considering non-Guidelines sentencing factors such as prior military service, the defendant's wife's pregnancy, his need to care for other children, and his entrepreneurial spirit).

The government next argues the district court's variance was impermissibly based on factors already taken into consideration in the calculation of the advisory guideline range, namely, White's lack of a criminal history and the limited number of pornographic images he distributed. This argument is also not well-taken. Pursuant to § 3553(a), a district court may consider factors already taken into account in calculating the advisory guideline range. See, e.g., United States v. Beal, 463 F.3d 834, 837 (8th Cir. 2006) (discussing the reasonableness of a variance based on criminal history).

The government also contends the thirty-three percent downward variance in this case is extraordinary, and thus must be supported by extraordinary circumstances. For this proposition, the government cites United States v. Bradford, 447 F.3d 1026 (8th Cir. 2006), identifying Bradford as a case which involved a thirty-six percent downward variance. In fact, the variance recognized as extraordinary in Bradford was "a *sixty-seven percent* downward variance from the bottom of the applicable guideline range." 447 F.3d at 1028 (emphasis added). The only reason given by the district court for departing sixty-seven percent was an overstated criminal history, which resulted in Bradford receiving a criminal history category of VI under the guidelines. Id. In discussing the extraordinariness of a sixty-seven percent variance based solely on an overstated criminal history, the court noted "even if Bradford had no criminal history and were placed in a criminal history category of I . . . [t]he thirty-six month sentence imposed would still be a thirty-six percent variance from the bottom of the guideline range." Id. at 1028-29. The Bradford court never identified this hypothetical thirty-six percent variance as extraordinary. We have, however, specifically identified an actual thirty-six percent variance as being within the permissible "range

of choice" available to a district court. United States v. Kicklighter, 413 F.3d 915, 918 (8th Cir. 2005) (citing Haack, 403 F.3d at 1004). We therefore reject the government's contention the variance involved in this case must be supported by extraordinary circumstances.

Finally, the government contends the sentence of seventy-two months is unreasonable when considering the overall facts of this case, that is, the district court "fail[ed] to consider a relevant factor that should have received significant weight, [gave] significant weight to an improper or irrelevant factor, or consider[ed] only appropriate factors but nevertheless commit[ted] a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." Haack, 403 F.3d at 1003. More specifically, the government contends there is nothing about the factors the district court considered in granting the variance (age, medical condition, lack of a criminal record, and limited number of pornographic images possessed and distributed) which actually merits a variance. In addition, the government claims the atypical nature of White's offense, in distributing child pornography to falsely implicate A.M.'s parents of child abuse, "strongly militates against the award of a downward deviation[.]"

While the district court indicated White's age (fifty-one years), his health problems (diabetes, high blood pressure, weakness in his extremities, and difficulty walking), and his lack of a criminal record were "factors" that played into consideration of a possible variance downward, it stated the "big factor" considered was the unusual nature of this particular offense. Sent. Tr. 37. The district court identified four aspects of this case which it believed were unusual – three mitigating in nature and one aggravating in nature: 1) the distribution count involved "one isolated event," 2) the single act of distribution was "very serious and damaging and traumatic," 3) the "50 images on the computer [was] extremely low," and 4) the low

-16-

number of images involved "has to factor into the psychological concern and problem that the individual has with regard to child pornography." Id. at 37-38.[4]

The district court then compared those aspects of this case to the "typical case" it encountered, where "[t]he distribution that we're normally talking about in this kind of case is one of distribution through a computer and sending images out across the internet to hundreds and perhaps thousands of other individuals" and where the possession involved "literally hundreds and often thousands of images located on the computer." Id. at 37. And while the district court did not specifically identify the "typical case" as one involving a defendant who posed a risk of committing sexual offenses against children, this seems implicit in the district court's recognition of the

---

[4]With respect to this fourth factor, it is significant White was subjected to psychosexual examinations at the request of both the government and his own attorney, and both experts agreed White did not fit the profile of a typical sexual offender in that he was at a low risk of committing another sexual offense. Dr. Jason Smith, the government's expert, indicated in his report:

> Mr. White appears to be low on these instruments that measure both the anti-social dimension of sexual offending and the erotic as well. In short, he has a low antisocial orientation with low risk of sexual offending against children.

Similarly, the report prepared by White's expert, Dr. Luis Rosell, indicates:

> Mr. White has many factors that make lower his risk. These include Mr. White's lack of criminal history, nonexistent sex offending history, time in the community without engaging in any sexually inappropriate or illegal behavior, family support, resides in small town where everyone is aware of his situation and decreased sex drive due to his medical condition. Given all the factors that make him a low risk to engage in future inappropriate sexual behavior, as well as social support it appears that Mr. White does not require sex offender specific treatment at this time.

lack of "psychological concern" White posed as reflected by the record. After conducting this comparison between White's unusual case and the "typical case" encountered, the district court determined a downward variance was appropriate, taking into account White's age, medical condition, and lack of a criminal record, as well as the three mitigating aspects of the case.

The government argues the limited number of images possessed by White supports an upward, rather than downward, variance because White would receive a two-level enhancement under the current guidelines. See U.S.S.G. § 2G2.2(b)(7)(A) (2006) ("If the offense involved . . . at least 10 images, but fewer than 150, increase by **2** levels."). We disagree. It would be unconstitutional under the ex post facto clause to apply the current version of the guidelines to White's conduct, which is why the district court utilized the 2001 version of the guidelines. The 2001 version of the guidelines made no adjustments for the number of images involved; thus, without a variance White's conduct in distributing just a single image and possessing a limited number of images would be treated the same for sentencing purposes as the "typical" defendant identified by the district court who distributed and possessed hundreds if not thousands of pornographic images. Because the 2001 version of the guidelines applied, the district court was within its discretion to treat White differently than the "typical" defendant would be treated under that version of the guidelines.

In support of the district court's variance, White calls our attention to United States v. Gray, 453 F.3d 1323 (11th Cir. 2006). In Gray, the defendant sent three e-mails containing child pornography to an undercover agent. When authorities searched Gray's home they found 300 images of child pornography on his computer. Gray admitted he had distributed additional images – other than the three sent to the undercover agent – over the Internet to other individuals. Gray was charged with possession and distribution of child pornography, and pleaded guilty to the distribution charge. Gray's advisory guideline range was 151 to 188 months. At sentencing, Gray noted he was sixty-four years old, had a history of health problems,

had never molested a child, and had a minimal criminal history. Based on these factors, the district court varied downward from the advisory guideline range and sentenced Gray to 72 months of imprisonment. The government appealed the sentence arguing it was unreasonable, but the Eleventh Circuit affirmed, stating:

> Here, the district court gave specific, valid reasons for imposing a sentence that was lower than the guidelines range. The court's statements at sentencing reflect that it took into account Gray's age, his prior minimal criminal record, and his medical condition. These are all valid considerations because they relate to the "history and characteristics of the defendant." The court weighed these factors against "the nature and circumstances of the offense" and decided to impose a non-guidelines sentence. There is no indication that the court imposed the lower sentence solely because it disagreed with the guidelines. Rather, the court's statements show that it believed the 72-month sentence to be reasonable. Although Gray's sentence is less than half the 151 months that defines the bottom of the guidelines range, under the circumstances and given the district court's explanation we cannot say that is unreasonable in light of the § 3553(a) factors.

Gray, 453 F.3d at 1325 (internal citations omitted).

We agree this case has many similarities to those involved in Gray. Like Gray, White is an older man with a deteriorating medical condition who has never molested a child. Gray had a limited criminal history, White has no criminal history. Added to this case is the fact that medical experts for both the government and defense identified White as a defendant who poses a low risk of recidivism. The number of images White distributed (one) and possessed (fifty) was lower than the number of images Gray distributed (more than three) and possessed (300). Finally, the percentage of variance White received (thirty-three percent) was well below the percentage Gray received (more than fifty percent). Although our court may not have affirmed the level of variance involved in Gray, like the Eleventh Circuit, we conclude all the factors the district court considered here were valid considerations, the district

-19-

court carefully weighed those factors against "the nature and circumstances of the offense," and the resulting thirty-three percent variance from the advisory guideline range was within the range of choices available to the district court.

Furthermore, while we recognize there are some inherent aggravating factors present in White's distribution of child pornography (discussed below), there are some mitigating aspects to White's single act of distribution as well. Typically, when a defendant distributes child pornography to others, the child depicted in the image is victimized repeatedly, because those who receive the image are likely to distribute the image to others who have a deviant interest in child pornography, who in turn distribute the image to others, and so on. The probability of repeated victimization is increased when the image is distributed over the Internet. White's single act of distribution did not take place over the Internet. In addition, White distributed the image to a state agency charged with the protection of children. Such a distribution virtually guarantees there will be no further distribution of that particular image to others, and thus the repeated victimization of the child normally present in the typical case is absent here.

With respect to the aggravating factor the government argues should negate any downward variance – the fact the single act of distribution involved a false report of child abuse against A.M.'s parents – the district court determined that the conduct "while reprehensible, is adequately dealt with in the calculation of the guidelines." Sent. Tr. 35. We agree.

If White had been charged with making a false report of child abuse against A.M.'s parents under Iowa law,[5] the charge would have been a simple misdemeanor[6] punishable by a fine and/or no more than thirty days in jail.[7]  In contrast, under the district court's calculation of the advisory guideline range, White received several enhancements which related exclusively to White's conduct of falsely accusing A.M.'s parents of child abuse, i.e., the single act of distribution.  The two-level enhancement White received under § 2G2.2(b)(2)(E) related exclusively to the single act of distribution, as did the two-level enhancement White received under § 3A1.1 for victimizing A.M. by falsely accusing her parents of child abuse.  All told, then, White received guideline enhancements due to the single act of distribution which increased his advisory guideline range four levels, from 70-87 months up to 108-135 months, an increase of 38-48 months.

We do not mean to downplay the reprehensible nature of White's false allegation against A.M.'s parents.  We do believe, however, the gravamen of the false report of child abuse was the harm done to A.M., a harm taken into account in the § 3A1.1 enhancement.  And while the federal guidelines have no specific enhancement to neatly capture and account for the additional harm done to A.M.'s parents as a result of the single act of distribution, we do believe the district court was within its discretion to determine the total harm which flowed from the false report of child

---

[5]There does not appear to be any federal statute specifically targeting the act of providing a false report of child abuse.

[6]See Iowa Code Ann. § 232.75(3) ("A person who reports or causes to be reported to the department of human services false information regarding an alleged act of child abuse, knowing that the information is false or that the act did not occur, commits a simple misdemeanor.").

[7]See Iowa Code Ann. § 903.1(1)(a) ("For a simple misdemeanor, there shall be a fine of at least sixty-five dollars but not to exceed six hundred twenty-five dollars. The court may order imprisonment not to exceed thirty days in lieu of a fine or in addition to a fine.").

-21-

abuse – an act which would have warranted no more than one month in jail under state law – was adequately dealt with by the 38 to 48 month increase in the advisory guideline range as a result of enhancements related exclusively to the single act of distribution.

In sum, the district court considered factors that were appropriate for it to consider in varying downward from the advisory guideline range, provided adequate reasons for its downward variance, and concluded a sentence of seventy-two months was "sufficient, but not greater than necessary" to punish White. 18 U.S.C. § 3553(a). When reviewing all the factors and the particular circumstances involved in this case, we cannot say a sentence of six years for the conduct at issue is unreasonable.

V

We affirm the district court's decision in all respects.

RILEY, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion except with respect to the affirmance of the downward variance. The district court properly calculated an advisory Guideline sentencing range of 108 to 135 months' imprisonment, yet it only imposed a sentence of 72 months' imprisonment. By varying downward four levels, the district court imposed a sentence that is not reasonable under the unique and disturbing facts of this case.

In calculating a downward variance, the district court considered several factors under 18 U.S.C. § 3553(a), including White's age, health, and lack of criminal history. The "big factor" for the district court was "to weigh the nature and circumstances of [White's] offense." The nature and circumstances of White's offense do not support the extent of the district court's downward variance.

-22-

White downloaded approximately fifty images of child pornography. White then printed an image of child pornography, falsely labeled it as an image of A.M. taken by A.M.'s mother, and anonymously mailed it to the Iowa Department of Human Services. In the context of deciding whether to apply the vulnerable victim enhancement, the district court found White should have known this course of action would cause A.M. and A.M.'s family "terrible emotional stress," and the district court correctly concluded "it was a vicious, vindictive act."

Generally, child pornography causes much harm, including:

(1) the use of children in the production of sexually explicit material is a form of sexual abuse that can result in physical or psychological harm, or both, to the children involved;

(2) child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years;

(3) child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children "having fun" participating in such activity;

(4) child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer;

(5) the existence of and traffic in child pornography creates the potential for many types of harm in the community; presents a clear and present danger to all children; and inflames the desires of child molesters,

pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography; and

(6) the sexualization and eroticization of minors through any form of child pornography has a deleterious effect on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them, and it creates an unwholesome environment that affects the psychological, mental, and emotional development of children and undermines the efforts of parents and families to encourage the sound mental, moral, and emotional development of children.

Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996).

By receiving, distributing, and possessing child pornography, White harmed (1) the child victim by viewing the recording of the child's abuse, (2) himself by desensitizing himself to the sexual abuse of children, by thinking of children as sexual objects, and by inflaming his own desire for child pornography, and (3) other children (and more generally, the community at large) by providing demand for the production of child pornography. White is neither less culpable nor less deserving of punishment than the typical defendant who receives, distributes, and possesses child pornography. Rather, White is at least as deserving of punishment (and possibly more so) as the typical defendant who receives, distributes, and possesses child pornography because White distributed child pornography with the specific intent to cause harm to A.M.'s family directly and A.M. indirectly.

As a direct result of White's course of action, A.M. (1) was taken from school, (2) physically examined and questioned by a doctor, and (3) temporarily removed, together with her siblings, from her parent's home and care. A.M. now is embarrassed in front of her doctor. She reports related nightmares. She is afraid of having her picture taken, and she feels angry, fearful for herself and her siblings, unsafe, sad,

scared, and confused.  In addition to all of the well recognized abstract harms caused by child pornography, White's distribution of child pornography specifically harmed A.M. and A.M.'s family in a manner that is uniquely deserving of punishment.

The panel opinion correctly observes White received two 2 level enhancements due to White's distribution of child pornography.  The 4 level downward variance offsets the two 2 level enhancements, effectively not holding White responsible for "a vicious, vindictive act" of distributing child pornography.

In addition, besides being convicted of one count of distributing child pornography, in violation of § 2252(a)(2), White was convicted of one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possessing child pornography, in violation of § 2252(a)(4).  Both the district court and the panel majority place emphasis on the atypical nature of White's distribution of child pornography.  Although a conviction for distributing child pornography to the Iowa Department of Human Services is atypical, there is nothing about White's convictions for receiving and possessing child pornography that justifies a downward variance.  By varying downward based on the atypical nature of White's distribution of child pornography, both the district court and the panel majority ignore the seriousness of White's receipt and possession convictions.

At sentencing, the district court noted White only possessed approximately fifty images of child pornography.  The 2001 version of the Guidelines contained no enhancement based on the number of images of child pornography involved in the offense.  See U.S.S.G. app. C. amend. 649 (2003); compare U.S.S.G. § 2G2.2(b) (2001), with U.S.S.G. § 2G2.2(b)(7)(A) (2006) ("If the offense involved . . . at least 10 images, but fewer than 150, increase by 2 levels.").  In comparison to the defendants with only a single image of child pornography, the defendants with hundreds of images deserve more punishment due to the nature and circumstances of the offense as well as the need for the sentence to reflect the seriousness of the crime,

to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(1), (2)(A).  That the defendants with hundreds of images deserve relatively more harsh sentences only logically supports the conclusion that the defendants with only a single image deserve relatively less harsh sentences; it does not logically support a conclusion that a defendant with fifty images deserves leniency in the form of a downward variance.  Cf. United States v. Feemster, 483 F.3d 583, 589 (8th Cir. 2007) ("The absence of grounds that justify further punishment is not a ground for a downward variance.").

The district court varied downward based on several other factors, including White's age at the time of sentencing.  Although the Guidelines are no longer mandatory, the Guidelines policy statements must be considered in imposing a sentence.  See 18 U.S.C. § 3553(a)(5)(A).  The Guidelines provide "[a]ge . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.1, p.s.  Significant variances based on a defendant's age produce unwarranted sentencing disparities because judges do not uniformly treat age as a mitigating factor.  See United States v. Maloney, 466 F.3d 663, 669 (8th Cir. 2006); see also 18 U.S.C. § 3553(a)(6).  A sentencing judge reasonably could conclude White's age of 51 should reflect more maturity and intelligence when dealing with child pornography, and that judge also reasonably could enhance White's sentence due to his age.  Although relevant to the inquiry conducted under § 3553(a) as a characteristic, White's age does not justify the extent of the downward variance. See Feemster, 483 F.3d at 590.

The district court also varied downward in part based on White's poor health, specifically, White's diabetes, high blood pressure, weak extremities, and difficulty in walking.  Again, although no longer mandatory, the Guidelines provide "[p]hysical condition . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.4, p.s.  Moreover, despite his health, White has painted signs, repaired a garbage truck, occasionally hauled garbage,

and annually set up and torn down a haunted house. White's health has little, if any, relevance and is not so extraordinary as to justify the extent of the downward variance. See United States v. Ture, 450 F.3d 352, 359 (8th Cir. 2006).

Finally, the district court varied in part based on White's lack of criminal history. White's criminal history calculation used in the advisory Guideline sentencing range expressly accounted for White's lack of criminal history and likelihood of recidivism.[8] See United States v. Garate, 482 F.3d 1013, 1017 (8th Cir. 2007), petition for cert. filed, (No. 07-5051) (June 28, 2007); United States v. McDonald, 461 F.3d 948, 953 (8th Cir. 2006), petition for cert. filed, (No. 06-8086) (Nov. 28, 2006). The district court's downward variance based on White's lack of criminal history and likelihood of recidivism places undue weight on factors already accounted for by the Guidelines.

The panel opinion also compares White's actions to what charges could be filed against White in Iowa state courts. A hypothetical conviction under Iowa law is not a relevant consideration in deciding the reasonableness of White's federal sentence. See United States v. McCormick, 474 F.3d 1012, 1014 (8th Cir. 2006); United States v. Jeremiah, 446 F.3d 805, 807-08 (8th Cir. 2006).

Thus, I respectfully dissent.

---

[8]In passing, the district court briefly noted a "psychological concern." The panel opinion interprets this reference to mean the district court concluded White had a low likelihood of recidivism. At sentencing, the district court never specifically addressed the psychological reports discussed in the panel opinion's footnote 4. Moreover, Dr. Smith concluded White was "at the low to moderate risk level" and the district court recommended White be considered to participate in the sex offender treatment program, although Dr. Rosell concluded White was a low risk and did not require sex offender specific treatments.