# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1667

_____

United States of America,

        Appellant,

    v.

Francisco Garate,

        Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Southern District of Iowa.

[PUBLISHED]

_____

Submitted: February 13, 2008
Filed: October 10, 2008

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

This case is before us on remand from the United States Supreme Court for reconsideration in light of Gall v. United States, 128 S. Ct. 586 (2007). We previously reversed and remanded as unreasonable the district court's[1] 30-month sentence imposed on Francisco Garate for two counts of traveling with the intent to engage in sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). See United States

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

v. Garate, 482 F.3d 1013 (8th Cir. 2007), vacated, 128 S. Ct. 862 (2008). We now affirm the district court's sentence.

I.

The detailed facts of this case can be found in our original opinion. See 482 F.3d at 1014-16. Garate was nineteen years old and living in California in 2002 when he met a twelve-year-old girl from Davenport, Iowa, through an internet chat room. Although Garate initially believed that the girl was eighteen, he learned from her father during a telephone conversation in June 2003 that the girl was then thirteen. Garate heeded the father's warnings to stop communicating with his daughter for awhile, but he and the girl resumed contact some time later.

Garate flew to Iowa to meet with the girl on two occasions, once in June 2004 when he was twenty-one and the girl was fourteen, and again in September 2004 when the girl was fifteen. On both occasions, Garate took the girl to an Econo Lodge motel where the two had sex. During the first visit, Garate gave the girl a $500 diamond ring. In September, the girl's father learned from phone records that the two were still communicating and called Garate's cell phone. Although then en route to Iowa to meet the girl for the second time, Garate assured her father that they only talked on the phone or over the internet and that there was no physical relationship.

During Garate's second trip, the girl's father discovered that his daughter was not at a friend's house as planned. The father, a former law enforcement officer, filed a missing person's report with the police department. One of the investigating officers recognized the Econo Lodge motel in a picture found in the girl's room, and the officers found the two at the motel. The girl was taken to the hospital where she underwent a sexual assault exam. Garate was arrested, waived his Miranda rights, and admitted that he had had oral, anal, and vaginal sex with the girl.

Garate was indicted on two counts of travel with intent to engage in sexual conduct with a minor, see 18 U.S.C. § 2423(b), and one count of inducement and coercion of a minor to engage in sexual activity, see 18 U.S.C. § 2422(b). Garate pleaded guilty to the travel charges, and the Government agreed to move for dismissal of the inducement charge.

The district court calculated an advisory sentencing Guidelines range of 57 to 71 months and sentenced Garate below the advisory range to 30 months imprisonment, relying on Garate's "very young age," his lack of a prior criminal history, his supportive family, the court's finding that Garate was not a predator, and the collateral consequences of being convicted as a sex offender. The Government appealed the sentence as unreasonable. We originally vacated and remanded for resentencing, concluding that the district court failed to consider factors that should have received significant weight and gave undue weight to other factors. The Supreme Court granted Garate's petition for certiorari, vacated our judgment, and remanded the case to us for reconsideration in light of the intervening case of Gall v. United States.

II.

In Gall, the Supreme Court clarified the standard of review for the appeal of a criminal sentence. Applying an abuse of discretion standard, we review for both procedural and substantive error. We must "first ensure that the district court committed no significant procedural error." Gall, 128 S. Ct. at 597. If the sentence is procedurally sound, we then review the substantive reasonableness of the sentence, considering the totality of the circumstances. Id. While we "may consider the extent of [any] deviation" from the advisory Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. That we may conclude that a different sentence is appropriate is an insufficient basis for reversing a district court's sentence. Id.

-3-

The Government argues that our prior panel opinion does not violate <u>Gall</u> because we did not use the "extraordinary variances require extraordinary circumstances" test, which the Supreme Court rejected in <u>Gall</u>. While the Supreme Court did reject that test, it reversed in <u>Gall</u> for the broader reason that the factors used by this court–namely the court's disagreement with the weight given by the district court to various factors–"whether viewed separately or in the aggregate, [were] [in]sufficient to support the conclusion that the District Judge abused his discretion." <u>Gall</u>, 128 S. Ct. at 594 (prefacing its discussion of the particular factors with an explanation of why the proportionality rule was inconsistent with <u>Booker</u>[2]). Thus, the original panel opinion's lack of a proportionality review in this case does not mean it necessarily passes muster after <u>Gall</u>, and we proceed to apply the <u>Gall</u> standard.

The Government does not assert that the district court made a procedural error, and we find none. We therefore review the sentence for substantive reasonableness. In short, the district court took evidence, heard argument, carefully considered a number of mitigating and aggravating factors that it found to be relevant under its 18 U.S.C. § 3553(a) review, and gave detailed reasons before sentencing Garate below the advisory Guidelines range to 30 months of imprisonment. Considered in the aggregate, the factors relied upon were not inappropriate under § 3553(a), including Garate's age and lack of maturity, <u>see</u> <u>Gall</u>, 128 S. Ct. at 601 (noting that considerations of age and immaturity are relevant to the defendant's character, finding support for such considerations in its own cases); his lack of a prior criminal record, <u>see</u> <u>United States v. McDonald</u>, 267 Fed. App. 477, 478-79 (8th Cir. 2008) (unpublished) (affirming a previously-reversed 130-month variance after remand in light of <u>Gall</u> where the district court relied, in part, on the defendant's lack of a prior criminal history); the lasting effects of being required to register as a sex offender, <u>see</u> <u>United States v. Anderson</u>, 533 F.3d 623, 633-34 (8th Cir. 2008) (concluding a sentence was not unreasonable where the district court considered, *inter alia*,

<hr>

[2]<u>United States v. Booker</u>, 543 U.S. 220 (2005).

punishment from loss of reputation and adverse effect on the defendant's marriage); and the district court's conclusion that Garate was not a predator and therefore was not similar to many of the pedophiles convicted for the same crime, see Gall, 128 S. Ct at 600 ("[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated.").

The defense presented Garate as being involved in a sincere, though poorly-judged, relationship while the Government portrayed Garate as preying on a young, vulnerable girl. For example, the Government argued that Garate's gift of a diamond ring showed the extent to which he went to control the girl, while the defense urged that the ring reflected Garate's sincere feelings for the girl. The district court's "institutional advantage," id. at 598, in sentencing the individual standing before it comes into play in making these judgment calls where the evidence can reasonably be construed in different ways. Gall is quite clear that the fact that we may have weighed some facts differently, particularly the very real harm suffered by the girl and her family, or that we, in applying our own individual decades of prior experience as sentencing judges in both the federal and state systems, would not have imposed the same 30-month sentence had we been sitting as the sentencing court, "is insufficient to justify reversal of the district court." Id. at 597. In light of the deferential standard of review set forth in Gall, we cannot say that the district court abused its discretion in weighing the evidence as it did, particularly where, as here, the facts can legitimately be viewed from different perspectives. Cf. id. at 599 n.9 (noting that the fact that the defendant walked away from dealing drugs after receiving a significant financial gain could be viewed from different perspectives).

## III.

Having obeyed the Supreme Court's command to reconsider the case in light of the Supreme Court's intervening opinion in <u>Gall</u>, we now affirm the original judgment of the district court.

_____