# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1977

_____

United States of America,      *
     *
        Plaintiff - Appellee,      *
     *
     *   Appeal from the United States
      v.      *   District Court for the
     *   Eastern District of Arkansas.
Wanda Faye Richart,      *
     *
        Defendant - Appellant.      *

_____

Submitted: January 12, 2011
Filed: December 8, 2011

_____

Before MURPHY, BYE, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

After a jury found Wanda Richart guilty of one count of conspiracy to make a false statement in violation of 18 U.S.C. § 371 and one count of making a false statement in violation of 18 U.S.C. § 1001, the district court[1] sentenced her to sixty months' imprisonment on each count, to be served consecutively, and three years' supervised release. Richart appeals her sentence, arguing that the district court committed procedural error in imposing a two-level adjustment for her role in the offense, in imposing an upward departure, and in running the two sentences

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

consecutive to each other. Richart also contends that the district court abused its discretion by imposing a substantively unreasonable sentence and by imposing special conditions of supervised release. For the reasons stated below, we affirm.

## I. Background

On February 6, 2008, Wanda Richart and her husband, Charles "Bubba" Richart, were charged with making, and conspiring to make, false statements to an FBI agent in violation of 18 U.S.C. §§ 371 and 1001. These charges were the result of an investigation by the FBI into the disappearance of Wanda and Bubba's fourteen-year-old niece, Christina Richart. Christina was the daughter of Bubba's deceased brother and had been living with Wanda and Bubba when she went missing in the summer of 1999. In 2005, the FBI began investigating Christina's disappearance, and during the course of that investigation, Wanda repeatedly told FBI agents that Christina had gone to live with an aunt in California. This was a lie, which Wanda told to prevent authorities from discovering what had really happened to Christina. In fact, Christina had died in the bathroom of the Richarts' house during the summer of 1999. At that time, Christina and her younger brother, Michael, were living with Wanda and Bubba, along with Wanda and Bubba's young son, Steven. Two other individuals also lived in the house: Richard Burton and Joann Holdman, who was pregnant.

At trial, Joann Holdman testified that on the day Christina died, Christina and Wanda got into an argument, and that at a certain point, Wanda told Christina that she needed a bath and forced her into the bathroom, where the argument continued. Holdman stated that after about ten or fifteen minutes of hearing Wanda and Christina yelling at each other in the bathroom and the sounds of splashing and crying, she heard a "thud" and then she "didn't hear Christina anymore." According to Holdman, when the bathroom door opened, Christina was lying in front of the bathtub, not breathing. Holdman testified that she felt Christina's neck for a pulse and was unable

to find one and that, when she put her hand on Christina's head, she felt a "mushy spot." Holdman stated that when she suggested calling for an ambulance, Wanda told her "not to do nothing stupid and that if I did anything stupid, she would kill me and my baby." The following morning, Holdman accompanied Wanda, Bubba, and Burton to bury Christina's body in the woods. Upon returning to the house, Wanda and Bubba gathered up Christina's clothes and belongings and burned them.

When asked if there was a discussion about what to tell people if they asked what had happened to Christina, Holdman testified that Wanda instructed the group to say that Christina's mother had returned and taken Christina to live with her. Holdman stated that she did not tell anybody what had happened to Christina because she was afraid of Wanda. She continued living with Wanda and Bubba for about a month after Christina died. According to Holdman, on the day she moved out, Wanda put her hand on Holdman's throat and told her that she could leave, but that if she told anybody anything about what really happened to Christina, Wanda would find her and kill her and her baby. Holdman also asserted that Wanda telephoned her soon after Holdman delivered her baby in March of 2000 and told her to "remember what we talked about," which Holdman interpreted as a renewal of the threat. After that phone call, Holdman had no further contact with Wanda. However, she testified at trial that when FBI agent Mike Lowe interviewed her in June of 2006, she lied and told him that Christina's aunt had taken Christina to live with her. When pressed, Holdman stated that she could not remember whether she told Lowe that Christina had gone to live with her mother or her aunt, but that whichever one Wanda had told her to say, that is what she would have told Lowe. Holdman explained that she told Lowe this lie because she was still afraid of Wanda. When Lowe returned in January of 2008, though, Holdman told him the truth about Christina because she "didn't want to be scared anymore."

Burton's trial testimony was that after the four adults returned from burying Christina's body, Wanda instructed them to tell people that Christina had gone to live

with an aunt in northern Arkansas or Oklahoma. Burton stated that he was interviewed by Lowe in October of 2005, in April of 2006, and in October of 2006, and that on each occasion he told the lie that Wanda had come up with. Bubba also testified at Wanda's trial. He stated that on the night Christina died, he did not call the police and did not call for an ambulance because Wanda told him not to. He testified that he did not remember who first came up with the false story about what happened to Christina, but that when he was interviewed by Lowe in October of 2005 and November of 2007, on both occasions, he told Lowe that Christina had gone to live with an aunt in California. Bubba also stated that Wanda told the FBI the same lie about Christina going to live in California with an aunt. In December of 2007, however, Bubba again met with Lowe and this time told the truth about what happened to Christina.

Donna Walker[2] testified at trial that Michael Richart, Christina's brother, came to live with her and her husband in May of 2000 after having been removed from Wanda and Bubba's care by the Department of Human Services ("DHS"). According to Walker, DHS became involved after Michael's school reported suspected abuse. Walker stated that when she first met with Wanda and Bubba, in May of 2000, Wanda told her that Christina had gone to live with a great-aunt in Oklahoma. In July of 2001, Walker and her husband began the process of adopting Michael, and Walker again contacted Wanda in order to obtain some necessary paperwork. Walker testified that during that conversation, she also asked about Christina, and Wanda told her that Christina had gone to live with an aunt in California. Walker noted the discrepancy between this story and the previous account she had received from Wanda, but did not pursue the matter. However, because Michael continued to ask about his sister, Walker began to search for Christina. Through her uncle, who was the police chief in Fordyce, Arkansas, Walker succeeded in getting a missing child report filed in early

_____

[2]Donna Walker is Michael Richart's adoptive mother. She and her husband took Michael in after he was removed from the Richarts' care in May of 2000, and subsequently adopted him.

-4-

2005, and in September of 2005, at the behest of Arkansas state police, the FBI became involved in the search for Christina.

On December 2, 2009, a jury found Wanda Richart guilty of both federal charges. On January 22, 2010, she pled nolo contendere in Arkansas state court to a charge of second degree murder, and was sentenced to 360 months' imprisonment. Her federal sentencing took place on April 23, 2010. The Pre-Sentence Investigation Report ("PSR") recommended a base offense level of six pursuant to U.S.S.G. § 2B1.1, and a two-level enhancement pursuant to § 3B1.1(c) for being "an organizer, leader, manager, or supervisor" of the conspiracy to make false statements. Based on a total offense level of eight and a criminal history category of I, the advisory Guidelines range was zero to six months' imprisonment. The PSR also referenced § 5K2.9, which provides for an upward departure to reflect the seriousness of the offense where the defendant committed the offense in order to conceal the commission of another offense, and § 5K2.21, which provides for an upward departure based on uncharged conduct that did not enter into the determination of the applicable Guidelines range. At sentencing, Richart made several factual objections to the PSR, including two that are relevant to her appeal. First, Richart objected to the allegation that she lied to FBI agents in order to hide not only Christina's murder but also physical abuse and sexual exploitation of Christina and the other minors in the Richarts' care. Second, Richart objected to paragraphs stating that she had threatened to kill Holdman and Holdman's unborn child. Richart also objected to the two-level enhancement for her role in the offense and to the language in the PSR regarding an upward departure.

The district court found that the trial testimony supported the allegations that Richart lied in order to conceal Christina's murder and that Richart threatened to kill Holdman. Therefore, the district court overruled Richart's objections to those statements. The district court found that the allegations about physical and sexual abuse were not supported by the trial testimony. However, at sentencing, Lowe

testified that he had interviewed Christina's younger brothers, Norman and Michael Richart, and that both boys told him that Wanda and Bubba physically and sexually abused Christina, Norman, and Michael. On the basis of this testimony, the district court overruled Richart's objection to the statements in the PSR regarding physical and sexual abuse. Further, the district court held that the two-level enhancement for role in the offense was appropriate because Richart "was the perpetrator of the idea to lie about what happened to Christina." Before sentencing Richart, the district court permitted the government to call Walker as a witness. Walker testified that Richart's lie about Christina's whereabouts caused Michael to maintain a dream of seeing his sister again and that this caused him emotional harm.

The district court sentenced Richart to the statutory maximum of 60 months' imprisonment on each count, to run consecutive to each other for a total of 120 months' imprisonment and consecutive to Richart's undischarged state sentence. The district court stated its reasons for imposing the instant sentence:

> I do believe that Ms. Richart murdered her niece . . . . I don't really know how much time Ms. Richart will do in [state prison]. I realize that she does not have good health, and I do believe that this sentence is appropriate under 18 United States Code Section 3553(a). I think that this crime of hers has caused not just Christina harm, but also has caused harm to many other people. And, of course, this has nothing to do with, really, the sentence imposed, but had it not been for Ms. Walker, this crime would have gone undetected I believe.
>
>  . . .
>
> [T]he Court . . . finds that, based on all the considerations in Section 3553(a) . . . this is a fair sentence under the circumstances, and I am finding that because, first of all, I don't know how much time she will actually do in state custody. I just don't know. And I find that she murdered her niece and that a zero-to-six month sentence is far, far too inadequate for such a brutal offense. And . . . I know that she is not being sentenced for [murdering her niece]. She is being sentenced for

-6-

lying about it, but one reason that she was able to go so long without being detected is that she did. She was successful in carrying on this lie for a while, and she caused untold harm as a result of the lie. And she lied about something very brutal, and she covered it up.

. . .

This is speculation, I admit. But had she not lied about what happened to this child and had not been successful in covering up for so many years what had happened, she might have even been convicted of a far more serious offense. I don't know. But she lied about it, and Christina's remains still have not been found, as far as I know.

. . .

She has received a 360-month sentence, and I am considering that. And I don't know how much of that time she will serve in Arkansas. And I don't think that, what she did, a 360-month sentence is really adequate because she lied and she covered it up and it worked for years and she caused a lot of harm. And I find that this is punishment that she deserves, and it also sends a message to deter others from committing similar offenses.

The district court also ordered three years of supervised release on each count, to run concurrent to each other, and imposed special conditions of supervised release. These special conditions require Richart to participate in sex-offender treatment and prohibit her from having direct contact with minors under the age of eighteen without written permission from the probation office, from entering into any area where children frequently congregate, and from possessing, subscribing to, or viewing any video, magazines, or literature depicting children in the nude or in sexually explicit positions. The district court explained that its reason for imposing these special conditions was its finding that Richart had abused children physically and sexually. Richart appeals her sentence, arguing that it is both procedurally unsound and

substantively unreasonable.  She also contends that the district court abused its discretion in imposing two of the special conditions of supervised release.

## II. Discussion

### A.  Procedural Error

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard."  United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotations marks omitted).  "In reviewing a defendant's sentence, we first ensure that the district court did not commit significant procedural error; then, absent significant procedural error, we review the sentence for substantive reasonableness."  United States v. Frausto, 636 F.3d 992, 995 (8th Cir. 2011) (internal quotation marks and alterations omitted).  "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'"  Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the [G]uidelines de novo."  Id. (internal quotations marks omitted).

### (i)  Adjustment for Role in Offense

Richart contends that the district court erred in calculating the advisory Guidelines range by applying a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c).  A district court may increase a defendant's offense level by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor" of one or more other participants in the criminal activity.  U.S.S.G. § 3B1.1(c).  In determining whether the adjustment applies, the district court should consider such factors as:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4; see also United States v. Rodriguez, 112 F.3d 374, 377 (8th Cir. 1997) (applying factors). In applying these factors, we have recognized that "[t]he terms 'organizer,' 'leader,' 'manager,' and 'supervisor' are to be construed broadly." United States v. McDonald, 521 F.3d 975, 978 (8th Cir. 2008). "To be subject to a role enhancement under § 3B1.1(c), a defendant need only manage or supervise one other participant," United States v. Davis, 583 F.3d 1081, 1097 (8th Cir. 2009), and "the simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor." United States v. Payton, 636 F.3d 1027, 1048 (8th Cir. 2011) (internal quotations marks omitted). However, § 3B1.1's enhancement "does not apply to a defendant who merely suggests committing the offense." U.S.S.G. § 3B1.1 cmt. n.4.

In overruling Richart's objection to the enhancement, the district court stated:

I find that [Richart], in fact, was the perpetrator of the idea to lie about what happened to Christina, about where she was taken. This was all not just to hide about who picked her up, but the fact that she was murdered. And the enhancement is not to apply to a defendant who merely suggests committing the offense. That's correct. The Court finds that this defendant actually committed the offense and that she did actually lie to agents and she was, of course, in the conspiracy to lie as well.

Richart does not contest the district court's factual finding that she was the one who came up with the idea to lie about what happened to Christina. However, she contends that this is not sufficient to support an enhancement under § 3B1.1(c) because she "merely suggest[ed]" that Burton, Holdman, and Bubba perpetrate the lie

-9-

and did not exercise sufficient "control and authority" over them to warrant application of the enhancement.

We do not think the fact that Richart actually told the lie to FBI agents and actually participated in the conspiracy to lie supports a conclusion that she did more than "merely suggest" to others that they also commit the offense. Nor are we convinced that coming up with the lie would, alone, be sufficient to warrant application of an adjustment under § 3B1.1(c). However, we need not definitively decide whether the district court erred in its application of the Guidelines to the facts because we find that any error was harmless. See United States v. Shuler, 598 F.3d 444, 447 (8th Cir. 2010) ("Because the Guidelines are now advisory, procedural errors in determining the advisory sentencing range are subject to harmless error analysis."); United States v. Jackson, 594 F.3d 1027, 1030 (8th Cir. 2010) ("[A] sentencing court's harmless error in applying the Guidelines does not require a remand.").

In the first place, Richart's argument that the facts of her case do not support the enhancement is unpersuasive. Based on the record in this case, there is sufficient evidence to support a finding that Richart was an organizer, leader, manager or supervisor. "A defendant need not directly control others in the organization to have functioned as an organizer." United States v. Morris, 18 F.3d 562, 569 (8th Cir. 1994). Rather, "the simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor." Payton, 636 F.3d at 1048 (internal quotations marks omitted). Here, the trial testimony supports a finding that Richart did more than "merely suggest" that Burton, Holdman, and Bubba lie about what had happened to Christina. Bubba testified that on the night Christina died, Wanda told him not to call the police or an ambulance, and Holdman testified that Wanda threatened to kill her and her unborn baby if she called for an ambulance. Both Holdman and Burton testified that Wanda *instructed* the group to tell people that Christina had gone to live with an aunt. See United States v. Drapeau, 121 F.3d 344, 350 (8th Cir. 1997) (affirming application of the

enhancement where the defendant "*instructed* his friends in the craft of constructing firebombs" and "*directed* his friends to obtain the ingredients for the firebombs, and [the defendant's] friends obeyed his commands" (emphases added)).  Further, Holdman stated that Wanda threatened to kill her and her unborn child if she ever told anybody what really happened to Christina.  Thus, there is ample evidence that Wanda Richart did more than merely proffer suggestions to her friends.

Second, while the district court did not explicitly state that it would have imposed the same sentence regardless of any error in its application of the § 3B1.1(c) adjustment, cf. United States v. Davis, 583 F.3d 1081, 1094–95 (8th Cir. 2009) (concluding that any error in classifying a defendant as a career offender would be harmless as the district court specifically stated it would impose the same sentence even if defendant was not deemed a career offender), on the highly unusual facts of this case, it is extremely unlikely that the district court would have imposed a lower sentence absent the § 3B1.1(c) enhancement.  Although the two-level enhancement increased Richart's offense level from six to eight, this had no effect on the advisory guideline range, which remained zero to six months.  Thus, with or without the § 3B1.1(c) adjustment, the district court would have started from the very same point before departing upward.  Additionally, the district court specifically sentenced Richart to the statutory maximum sentence on both counts, and its list of reasons for doing so did not include any reference to Richart's leadership role.  We conclude that any error in applying the enhancement under § 3B1.1(c) was harmless.

(ii)  Upward Departure or Variance

Next, Richart contends that the district court committed procedural error in imposing an upward departure based on U.S.S.G. § 5K2.9.  Section 5K2.9 is a policy statement, which provides, "If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's

-11-

conduct." The district court found that an upward departure was appropriate under § 5K2.9 because Richart lied to cover up the fact that she murdered Christina. Richart argues that her act in lying to federal agents in order to conceal her own wrongdoing is not outside the "heartland" of typical cases and, therefore, a departure is unwarranted. Richart relies on United States v. Robertson, 324 F.3d 1028 (8th Cir. 2003), in which we reversed the district court's decision to depart upward under § 5K2.9. In Robertson, we explained that "the possibility that a suspect would lie to an interrogator in order to minimize his exposure to criminal prosecution most certainly would have been" taken into account by the Sentencing Commission in establishing the guideline range for a violation of 18 U.S.C. § 1001. Id. at 1032. Therefore, we held that "a case in which the defendant knowingly lies to a federal agent regarding a fact material to the agent's investigation" does not "fall[] outside the heartland of such offenses merely because the defendant told the lie to conceal aspects of the offense for which he was arrested." Id.

Richart's reliance on Robertson is misplaced. Although we concluded in Robertson that, in that case, the defendant's actions did not fall outside the heartland of § 1001 offenses, we acknowledged that a departure would be warranted if the defendant's conduct "'significantly differs from the norm.'" Id. at 1031 (quoting United States v. Evans, 148 F.3d 477, 485 (5th Cir. 1998) (affirming a § 5K2.9 upward departure from a sentence for extortion based on "the sheer scale of the violations," which set the offense apart from the incidental violations taken into account by the Sentencing Commission)). Here, the district court concluded, and we agree, that Richart's case differs significantly from the norm. As the district court explained, this is not a case of "someone who is lying to a federal agent about whether he paid a tax or wrote a check . . . it's about lying to a federal agent about what happened to a child when the person lying murdered the child." Richart lied to federal agents in order to cover up a particularly brutal crime, and, as a result, she successfully avoided detection of that crime for many years. Further, the district court believed that "had [Richart] not been successful in covering up [Christina's murder]

-12-

for so many years . . . , she might have even been convicted of a far more serious offence" than second degree murder.  In addition, Richart's lies not only prevented discovery of her underlying crime but also increased the harm by giving Christina's brother, Michael, false hope of being reunited with Christina.  Richart does not argue that any of these factual findings are clearly erroneous,[3] and the district court did not err as a matter of law in concluding that such facts warranted an upward departure under § 5K2.9.

In any event, any procedural error in imposing an upward departure pursuant to § 5K2.9 would have been harmless.  The district court justified its decision to impose a sentence above the advisory guideline range by referencing *both* U.S.S.G. § 5K2.9 and 18 U.S.C. § 3553(a).  Therefore, it is unclear whether the district court imposed an upward departure or an upward variance.  The distinction is immaterial, however, where, as here, the district court appropriately considered and explained the relevant  § 3553(a) factors.  United States v. Washington, 515 F.3d 861, 866–67 (8th Cir. 2008) (finding "no significant procedural error" when the district court "described its sentence as a 'variance or upward departure' from the Guidelines range and drew no distinctions between the two terms" because the court "appropriately considered the relevant factors of § 3553(a)" and "provided an adequate explanation for the variance"); cf. United States v. Villareal-Amarillas, 562 F.3d 892, 898 (8th Cir. 2009) ("After Booker, the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a).  The judge is cabined, but also liberated, by the § 3553(a) factors."

---

[3]We are unable to detect any evidence in the record supporting the district court's speculation that Richart might have been convicted of a more serious offense in state court had she not been successful in carrying on her lie for so long.  Nor are we aware of any more reliable evidence of harm to other people than Walker's non-expert testimony at sentencing that the lie caused Michael emotional harm.  However, Richart has not attacked any of these factual determinations as clearly erroneous.  As a result, for the purposes of this appeal, we will assume that the district court did not err in "selecting a sentence based on clearly erroneous facts."  Gall, 552 U.S. at 51.

(internal quotation marks, alterations, and citation omitted)); <u>United States v. Jones</u>, 509 F.3d 911, 915 (8th Cir. 2007) (holding that the district court did not err in declining to depart from the advisory guidelines range based on the defendant's jail misconduct yet imposing a variance under § 3553(a) based on the same jail misconduct). Here, the district court explicitly found that the sentence imposed was fair and appropriate "based on all the considerations in Section 3553(a)," and thoroughly documented its justifications for the variance. Thus, the district court committed no significant procedural error. <u>Washington</u>, 515 F.3d at 867; <u>see also</u> <u>Gall</u>, 552 U.S. at 53 (finding "no significant procedural error" where the District Judge "correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the § 3553(a) factors, and thoroughly documented his reasoning").

For similar reasons, we also reject Richart's argument that the district court erred in failing to explain the degree of its variance. "The Supreme Court in <u>Gall</u> explained that a sentencing court 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" <u>United States v. Deegan</u>, 605 F.3d 625, 629 (8th Cir. 2010) (quoting <u>Gall</u>, 552 U.S. at 50). However, "we do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered." <u>United States v. Dieken</u>, 432 F.3d 906, 909 (8th Cir. 2006). Nor have we required district courts to make specific findings on the record about each § 3553(a) factor. <u>United States v. Perkins</u>, 526 F.3d 1107, 1110 (8th Cir. 2008). "[A]ll that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors," and "[i]f a district court references some of the considerations contained in § 3553(a), we are ordinarily satisfied that the district court was aware of the entire contents of the relevant statute." <u>Id.</u> at 1110–11 (internal quotation marks omitted).

Here, the district court twice stated that it had "carefully considered" the § 3553(a) factors. In addition, the court explained at some length its reasons for imposing consecutive sixty-month sentences: Richart lied to cover up the fact that she murdered her niece and it was unclear how much time she would actually serve in state prison for the murder; Richart successfully carried on the lie for a long period of time, causing harm not just to Christina but to "many other people"; the lie may have prevented Richart from being convicted for a more serious offense than second degree murder; Richart's crime would have gone undetected but for Donna Walker; and 120 months' imprisonment provided just punishment for Richart's offense and "sends a message to deter others from committing similar offenses."[4] This explanation "demonstrat[ed] consideration of the statutory sentencing factors." Villareal-Amarillas, 562 F.3d at 899. The district court's reasons show that it considered the first § 3553(a) factor, which concerns the nature and circumstances of the offense, as well as the seriousness of the offense, the need for just punishment, and the need for deterrence, all of which fall under the second § 3553(a) factor. Further, the district court considered the need to avoid unwarranted sentence disparities among similarly-situated defendants, which is the sixth § 3553(a) factor, finding that Richart's conduct was of a different order from that of defendants who lied to federal agents about their involvement in less-serious crimes. Based on our review of the lengthy sentencing colloquy, we are satisfied that the district court "'considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority.'" United States v. Starfield, 563 F.3d 673, 675 (8th Cir. 2009) (quoting Rita v. United States, 551 U.S. 338, 356 (2007)). Accordingly, we find no procedural error in the district court's decision to vary up to the statutory maximum on each count.

---

[4]As noted above, because Richart does not argue otherwise, we assume the district court did not err in making these factual determinations.

(iii) Consecutive Counts

Richart argues, further, that the district court erred in running the two sixty-month sentences consecutive to each other. "[W]e review the district court's decision to impose consecutive sentences for reasonableness." United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010). Richart contends that the district court's decision to impose consecutive sentences was unreasonable because it violated U.S.S.G. § 5G1.2 and because there was not a sufficient basis to run the counts consecutively. Section 5G1.2 states, in relevant part:

(c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

We have defined the phrase "'total punishment' to mean 'the precise sentence determined by the sentencing judge from within the appropriate [G]uidelines range.'" Rutherford, 599 F.3d at 820 (alteration in original) (quoting United States v. Ervasti, 201 F.3d 1029, 1045–46 (8th Cir. 2000)). However, the now-advisory Guidelines "cannot mandate a sentence within the calculated range or concurrent sentencing." Id. at 821. In addition to the Guidelines, "18 U.S.C. § 3584 and 18 U.S.C. § 3553 are relevant 'statutory concerns' for the district court to consider in reaching its ultimate sentence." Id. Section 3584 states that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively," and directs that the district court, "in determining whether the terms

imposed are to be ordered to run concurrently or consecutively, shall consider . . . the factors set forth in section 3553(a)." Thus, "[t]he applicability of § 5G1.2 to cases involving multiple counts is narrow." Rutherford, 599 F.3d at 821. "Notably § 5G1.2 does not alternatively limit the district court's discretion to sentence consecutively when the total punishment is less than the statutory maximum. In other words, § 5G1.2 does not describe the only time a court may impose consecutive sentences." Id. (emphasis omitted); see also United States v. Jarvis, 606 F.3d 552, 554 (8th Cir. 2010) ("Although the court must consider the [G]uidelines when fashioning an appropriate sentence, the [G]uidelines do not control whether sentences run concurrently or consecutively." (internal citation omitted)).

"In fashioning sentences, whether concurrent or consecutive, a district court must still continue to determine the appropriate Guidelines range and then consider the § 3553(a) factors." Rutherford, 599 F.3d at 821. Here, the district court considered the Guidelines range, which the parties agreed was properly calculated to be between zero and six months, before considering the factors set forth in § 3553(a), as required by § 3584(b) and our precedents, in order to determine whether to impose a consecutive or concurrent sentence. See id. The district court expressly stated that 120 months of incarceration "is appropriate under 18 United States Code Section 3553(a)." This finding reflects the district court's conclusion that, even after departing up to the statutory maximum on each count, concurrent sentences would not be sufficient under the facts of the case, and, therefore, consecutive sentences were required to achieve the appropriate total punishment.

Richart contends that the decision to run the two sixty-month sentences consecutive to each other "constitutes an additional upward departure independent of the upward departure from the calculated guideline range to the statutory maximum and the court procedurally erred in failing to explain and / or support sufficiently this departure." We reject this argument, too. As we explained in Part II.A.(ii), above, the district court adequately demonstrated consideration of the statutory sentencing

factors in determining that 120 months' imprisonment was an appropriate sentence. The court did not procedurally err in achieving this objective by varying up to the statutory maximum on each count and running the two sentences consecutive to each other. The district court correctly calculated the advisory guideline range, properly considered the § 3553(a) factors, selected a 120-month sentence based on factual findings that were not clearly erroneous, and adequately explained the chosen sentence. See Gall, 552 U.S. at 51; Frausto, 636 F.3d at 995. Consequently, we find no procedural error in the district court's analysis.

## B. Substantive Reasonableness

"Our second task on appeal, if we are certain that the district court's decision is 'procedurally sound,' is to 'then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" Washington, 515 F.3d at 865 (quoting Gall, 552 U.S. at 51). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but . . . commits a clear error of judgment." United States v. Saddler, 538 F.3d 879, 890 (8th Cir. 2008) (internal quotations marks omitted). Richart asserts error of all three types. First, Richart contends that the district court gave improper weight to her state sentence for Christina's murder, which the district court deemed inadequate. Specifically, she contends that the instant sentence was "clearly driven" by this one factor. Moreover, she asserts that the district court should not have considered her state conviction at all because this factor is already taken into account by the Guidelines in establishing the base offense level for a violation of 18 U.S.C. § 1001. Second, Richart argues that the district court failed to give sufficient weight to the advisory guideline range. Finally, Richart contends that the factors relied on by the district court did not support a sentence of 120 months, which was greater than necessary to achieve the purposes set forth in § 3553(a)(2).

We do not agree with Richart that the sentence imposed by the district court was driven solely by its belief that her state sentence for Christina's murder was inadequate. While the district court gave significant weight to the fact that Richart murdered her niece and to the uncertain amount of time Richart will actually serve in state prison, the court also gave several other reasons for concluding that the sentence imposed was appropriate, including: that Richart's lie was about something very brutal and caused harm to many people; that Richart successfully carried on the lie for a long period of time, and might otherwise have been convicted of a more serious offense than second degree murder; that Richart's crime would have gone undetected but for Donna Walker; and that 120 months' imprisonment provided just punishment and deterred others from committing similar offenses. Nevertheless, were we to conclude that the district court ought not to have considered Richart's state conviction at all, remand would likely be necessary. See, e.g., United States v. Bertling, 611 F.3d 477, 482 (8th Cir. 2010) ("To be sure, the district court discussed other reasons for varying from [the appellants'] advisory guidelines ranges, but that fact alone does not allow us to affirm the sentences."); accord United States v. Hunt, 521 F.3d 636, 649 (6th Cir. 2008) ("[I]t does not matter that the district court relied on a number . . . of relevant facts in its sentencing, if it also relied on facts that it could not properly consider.").

We do not believe, though, that Richart's state murder conviction was an "improper or irrelevant factor" for the district court to consider. We agree with the district court that "the second-degree murder offense[] in no way enhanced under the [G]uidelines . . . the sentence [Richart] received on either count. . . . It might have been relevant conduct for purposes of not giving her criminal history points, but it did not in any way affect the guideline calculation of either . . . the conspiracy count or the substantive count." Further, as we explained in Part II.A.(ii), above, the circumstances of Richart's case take it outside the "heartland" of typical 18 U.S.C. § 1001 violations. Consequently, we disagree with Richart's argument that the fact that she killed her niece is already taken into account by the Guidelines in establishing the guideline range for a violation of § 1001.

In any case, "we previously have allowed variances based on factors already taken into account by the advisory guidelines," where the Guidelines do not fully account for those factors, or "when a district court applies broader § 3553(a) considerations in granting the variance." Jones, 509 F.3d at 914 (internal quotations marks omitted) (affirming an upward variance based on the defendant's jailhouse misconduct even though that misconduct was also the basis for denying a two-level decrease for acceptance of responsibility, because the misconduct "not only demonstrated his lack of acceptance of responsibility, but, . . . [also] clearly was relevant to other § 3553(a) factors"); United States v. Fiorito, 640 F.3d 338, 352 (8th Cir. 2011) ("[W]e have held that a district court may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts." (internal quotation marks and alteration omitted)); see also United States v. Chase, 560 F.3d 828, 831 (8th Cir. 2009) ("[F]actors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance."); United States v. Roberson, 334 Fed. Appx. 787, 790 (8th Cir. 2009) (unpublished) (affirming the district court's upward variance because "[w]hile it is true the Guidelines accounted for the seriousness of the instant offense . . . the district court did not abuse its discretion in concluding the Guidelines did not account for [its] extreme, dangerous, and random nature"). Thus, even if though the guideline range for a violation of 18 U.S.C. § 1001 already accounts for "the possibility that a suspect would lie to an interrogator in order to minimize his exposure to criminal prosecution," Robertson, 324 F.3d at 1032, the district court did not err in varying upward based on its determination that the Guidelines do not fully account for the nature, circumstances, and seriousness of Richart's offense, see 18 U.S.C. § 3553(a)(1), (2)(A). Accordingly, "we cannot say that the district court abused its discretion by giving too much weight to an improper factor." United States v. Barrett, 552 F.3d 724, 727 (8th Cir. 2009).

-20-

We also disagree with Richart's assertion that the district court failed to give sufficient weight to the advisory guideline range.  The district court acknowledged at sentencing that "[t]he custody range is zero to [six] months under the [G]uidelines," but explicitly found that "a zero-to-six month sentence is far, far too inadequate." Clearly, the district court did not fail to consider this relevant factor.  See Saddler, 538 F.3d at 890 ("A district court abuses its discretion . . . when it fails to consider a relevant factor that should have received significant weight . . . ." (internal quotations marks omitted)).  Therefore, we turn to Richart's argument that a 120-month sentence was greater than necessary to achieve the purposes set forth in § 3553(a)(2).  Section 3553(a) provides that the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." These purposes are the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

In this case, the district court varied upward from the top of the advisory guideline range by fifty-four months on each count, and ran the two sentences consecutive to each other to achieve a total upward variance of 114 months from what Gall characterizes as "the initial benchmark."  552 U.S. at 49.  This upward variance is "neither minor nor insubstantial," and "[e]ven under Gall, 'a [major] variance should be supported by a more significant justification than a minor one.'"  Washington, 515

F.3d at 867 (alteration in original) (quoting Gall, 552 U.S. at 50). The district court "must make an individualized assessment based on the facts presented," and upon determining that a non-Guidelines sentence is warranted, the district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50; Washington, 515 F.3d at 867.

However, even though the sentence imposed is outside the advisory Guidelines range, our substantive review of Richart's sentence is "narrow and deferential." Feemster, 572 F.3d at 464 (internal quotation marks omitted); see also Gall, 552 U.S. at 51 ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). Thus, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Feemster, 572 F.3d at 464 (internal quotation marks omitted). We "may consider the extent of [any variance from the Guidelines range], but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51. "We may not require extraordinary circumstances to justify a sentence outside the Guidelines and are prohibited from the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Feemster, 572 F.3d at 462 (emphasis omitted) (internal quotation marks omitted) (citing Gall, 552 U.S. at 47). While we must ensure that the district court gave "serious consideration to the extent of any departure from the Guidelines" and explained its "conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications," id. at 462 (quoting Gall, 552 U.S. at 46), the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court," Gall, 552 U.S. at 51.

In this case, as noted, the district court explained that a 120-month sentence was appropriate because: Richart's lie was about something very brutal; Richart's crime in murdering her niece would have gone undetected but for Donna Walker; Richart successfully carried on the lie for a long period of time and, absent the lie, might have been convicted of a more serious offense than second degree murder; it was unclear how much time Richart would actually serve in state prison; Richart's lie caused harm not just to Christina but to "many other people"; and 120 months' imprisonment provided just punishment for Richart's offense and "sends a message to deter others from committing similar offenses."

Viewing the district court's sentencing decision with due deference, we cannot say that the district court abused its discretion. See United States v. Mangum, 625 F.3d 466, 470 (8th Cir. 2010). "[A] sentencing court has wide latitude to weigh the section 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Lozoya, 623 F.3d 624, 627 (8th Cir. 2010) (internal quotation marks omitted) (rejecting appellants' argument that the circumstances were not extraordinary enough to justify upward variances of sixty-five and forty-three months). Simply because the district court weighed the relevant factors more heavily than Richart would prefer does not mean the district court abused its discretion. See id.; see also United States v. Townsend, 617 F.3d 991, 995 (8th Cir. 2010) (explaining that the appellant "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors"); Mangum, 625 F.3d at 470 ("Where a district court in imposing a sentence makes an individualized assessment based on the facts presented, addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." (internal quotation marks and alterations omitted)).

"We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate. A district court's sentence

need not be the most appropriate one, it need only be a reasonable one." United States v. Irey, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc) (citations omitted)); see also United States v. Kane, 639 F.3d 1121, 1134 (8th Cir. 2011) (holding that although this court's assessment of whether two co-defendants were "similarly situated" for purposes of weighing § 3553(a)(6) "would be different" than the district court's, "viewed through the lens of Gall, . . . the district court acted within its broad discretion" (internal quotation marks omitted)); United States v. Garate, 543 F.3d 1026, 1029 (8th Cir. 2008) ("Gall is quite clear that the fact that we may have weighed some facts differently, . . . or that we, in applying our own individual decades of prior experience as sentencing judges in both the federal and state systems, would not have imposed the same . . . sentence had we been sitting as the sentencing court, 'is insufficient to justify reversal of the district court.'" (quoting Gall, 552 U.S. at 51)).

Indeed, this court has previously upheld comparable, and even larger, absolute month variances, in deference to the sentencing judge's "institutional advantage" in finding facts and judging their import under § 3553(a). Gall, 552 U.S. at 51–52; see, e.g., United States v. Foy, 617 F.3d 1029, 1038 (8th Cir. 2010) (affirming a 218-month upward variance because (1) "[w]e are not entitled . . . under our deferential review to overturn a sentencing decision because we might have reasonably concluded a different sentence was appropriate"; (2) "the district court provided as our precedent requires, substantial insight into the reasons for its determination"; and (3) "the district court's explicit justifications rest largely on the kind of defendant-specific determinations that are within the special competence of sentencing courts" (internal quotation marks omitted)); United States v. Azure, 596 F.3d 449, 456 (8th Cir. 2010) (affirming the district court's decision to run two sentences consecutively in order to achieve a 180-month sentence, which was 84 months above the top of the advisory guideline range for each count); United States v. Dehghani, 550 F.3d 716, 723 (8th Cir. 2008) (affirming an upward variance of 105 months to achieve a sentence of 432 months' imprisonment, and explaining that "[b]ecause the sentencing judge is in a superior position to weigh the relevant factors under § 3553(a), the fact that we might

-24-

reasonably conclude 'that a different sentence was appropriate is insufficient to justify reversal of the district court'" (quoting Gall, 552 U.S. at 51); United States v. McDonald, 267 Fed. Appx. 477, 478–79 (8th Cir. 2008) (unpublished) (recognizing the Supreme Court's rejection of an appellate rule that requires "extraordinary circumstances" to justify an extraordinary variance, and affirming a 130-month downward variance "[u]nder the more deferential abuse-of-discretion review outlined by the Supreme Court in Gall" (internal quotation marks omitted)); United States v. Larrabee, 436 F.3d 890, 894 (8th Cir. 2006) (affirming an upward variance of 128 months).

Ultimately, the district court determined that the circumstances of Richart's offense were not typical, but were particularly egregious and out of the ordinary, justifying a significant upward variance.  Giving deference to the district court as required by Gall, we cannot say that the district court committed a clear error of judgment in weighing the relevant factors.  See Kane, 639 F.3d at 1136 ("Because of the substantial deference district courts are due in sentencing, we give their decisions about what is reasonable wide berth and almost always let them pass." (internal quotation marks omitted)).  Particularly given the impermissibility of proportionality review after Gall, 552 U.S at 49, we see no basis to conclude that the district court abused its discretion in sentencing Richart to 120 months' imprisonment.  See, e.g., United States v. Bear Robe, 521 F.3d 909, 911 (8th Cir. 2008); United States v. Austad, 519 F.3d 431, 435 (8th Cir. 2008) (opining that before Gall, the defendant's sentence "might have presented a closer issue," but recognizing that "[i]n light of Gall, . . . although it is uncontroversial that a major departure should be supported by a more significant justification than a minor one, the justification need not be precisely proportionate" (internal quotation marks and citations omitted) (emphasis omitted)).  Accordingly, we find that Richart's sentence is substantively reasonable and affirm the judgment of the district court.

## C. Special Conditions of Supervised Release

Lastly, Richart objects to two of the special conditions of supervised release imposed by the district court. She argues that the district court abused its discretion in imposing special condition one, which requires her to participate in sexual offender treatment, and special condition three, which forbids direct contact with minors absent written approval from her probation officer and prohibits her from entering areas children frequent. "We review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion." United States v. Jorge-Salgado, 520 F.3d 840, 842 (8th Cir. 2008) (internal quotation marks omitted). "The district court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet the requirements of 18 U.S.C. § 3583(d)." United States v. Boston, 494 F.3d 660, 667 (8th Cir. 2007). Section 3583(d) requires that any special conditions imposed must be "reasonably related" to "the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medicinal or other correctional needs." See United States v. Bender, 566 F.3d 748, 751 (8th Cir. 2009) (internal quotation marks omitted). In addition, such conditions must "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve these purposes and must be "consistent with any pertinent policy statements issued by the Sentencing Commission." § 3583(d).

Richart contends that special conditions one and three are unwarranted under § 3583 because the district court's factual finding that Richart physically and sexually abused the children in her care was clearly erroneous. See United States v. Douglas, 646 F.3d 1134, 1136 (8th Cir. 2011) (recognizing that we review the district court's factual findings at sentencing for clear error). She concedes that if the district court did not clearly err in finding that she physically and sexually abused the children in her care, then the special conditions were proper. At sentencing, the district court

overruled Richart's objection to the allegations in the PSR that Richart physically and sexually abused the children in her care based on the testimony of Agent Lowe. Lowe's testimony was as follows:

> Q:	And let's address the allegation of physical abuse and sexual abuse against Christina, Michael, and Norman.  Have you interviewed Michael Richart about this?
> A:	Yes.
> Q:	Have you interviewed Norman Richart about this?
> A:	Yes.
> Q:	The allegations of sexual and physical abuse, who does it come from?
> A:	It comes from Norman and Michael.
> Q:	And they said they were abused physically and sexually?
> A:	Yes, they did.
> Q:	By whom?
> A:	Wanda and Bubba Richart.

Richart asserts that Lowe's testimony is insufficiently reliable to support the district court's finding because it is uncorroborated hearsay.  "A district court has wide discretion at sentencing as to the kind of information considered or its source."  United States v. Atkins, 250 F.3d 1203, 1212 (8th Cir. 2001) (citing United States v. Johnson, 767 F.2d 1259, 1276 (8th Cir. 1985)).  "'In resolving any . . . dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'"  United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009) (emphasis omitted) (quoting U.S.S.G. § 6A1.3(a)).  "In other words, relevant hearsay testimony may be considered if sufficiently reliable reasons demonstrate the testimony is probably accurate."  United States v. Woods, 596 F.3d 445, 448 (8th Cir. 2010) (citing   United States v. Sharpfish, 408 F.3d 507, 511 (8th Cir. 2005)).   "The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to

the sound discretion of the district court." Id. (quoting United States v. Cassidy, 6 F.3d 554, 557 (8th Cir. 1993)).

The district court recognized that Lowe's testimony was hearsay, but held that it was corroborated by other allegations in the PSR, namely that Norman was removed from Wanda and Bubba's care prior to Christina's death based on reports of abuse, and that Michael was removed from their care after Christina's death also because abuse was reported. Lowe's evidence was corroborated by the testimony of Donna Walker, who stated both at trial and at sentencing that Michael Richart came to live with her and her husband after his teachers reported suspected abuse. Therefore, we conclude that the district court did not abuse its discretion in determining that Lowe's testimony was probably accurate. Woods, 596 F.3d at 448. In light of Lowe's and Walker's testimony, the district court's factual finding that Richart sexually abused the children in her care was not clearly erroneous. As such, special conditions one and three are reasonably related to the goals of § 3553(a). Bender, 566 F.3d at 751. Accordingly, we affirm the district court's imposition of the conditions of supervised release.

## III. Conclusion

Accordingly, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.

Not too long ago the Supreme Court observed: "In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." Rita v. United States, 551 U.S. 338, 354 (2007). The district court here varied upward from the 0 to 6 months Guideline range and sentenced Richart to 120 months' imprisonment—the statutory maximum—for making, and conspiring to make, false statements to an FBI agent. The district court's 120-month sentence is the

type of mistake we ought to correct, and by holding the sentence substantively reasonable, the majority today abandons "'the post that we have been ordered to hold in sentencing review and the responsibility that goes with it.'" United States v. Kane, 639 F.3d 1121, 1136 (8th Cir. 2011) (quoting United States v. Irey, 612 F.3d 1160, 1225 (11th Cir. 2010) (en banc)). Therefore, I respectfully dissent.

While addressing a substantive reasonableness challenge, we consider the totality of the circumstances and review the sentencing court's decision for an abuse of discretion. United States v. Reynolds, 643 F.3d 1130, 1136 (8th Cir. 2011). A sentencing court abuses its discretion if it: "'(1) fails to consider a relevant factor that should have received significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v. Shakal, 644 F.3d 642, 645 (8th Cir. 2011) (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). In other words, "'substantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions.'" Kane, 639 at 1136 (quoting Irey, 612 F.3d at 1193-94 (collecting cases)). Based on the record before us, I would conclude the district court's 120-month sentence is the product of unreasonable weighing decisions and is, therefore, substantively unreasonable.

The record demonstrates the district court's decision to vary upward from the 0 to 6 months Guideline range, and impose a 120-month sentence, rested largely, if not exclusively, on the court's desire to correct what it perceived to be an inadequate state sentence for Richart's second-degree murder conviction. Specifically, the court gave significant weight to the nature of Richart's state conviction, the length of her state sentence, and the uncertain amount of time she would actually serve in state prison. The court observed:

> [T]his is a fair sentence under the circumstances, and I am finding that because, first of all, I don't know how much time she will actually do in

-29-

state custody. I just don't know. And I find that she murdered her niece and that a zero-to-six month sentence is far, far too inadequate for such a brutal offense. And she also—and I know that she is not being sentenced for that offense. She is being sentenced for lying about it, but one reason that she was able to go for so long without being detected is that she did.

. . .

And she got a 30-year sentence, and I don't know—and, again, I don't know how much of that time she will actually serve. And I believe that she could have—I don't know. This is speculation, I admit. But had she not lied about what happened to this child and had not been successful in covering it up so many years what had happened, she might have even been convicted of a far more serious offense.

. . .

She has received a 360-month [state-court] sentence, and I am considering that. And I don't know how much of that time she will serve in Arkansas. And I don't think, what she did, a 360-month sentence is really adequate because she lied and she covered it up and it worked for years and she caused a lot of harm. And I find that this is punishment that she deserves, and it also sends a message to deter others from committing similar offenses.

Sentencing Tr. at 36-37, 39-41.

Read in isolation, the district court's last statement may suggest Richart's sentence was necessary "to provide just punishment" and "to afford adequate deterrence to criminal conduct." See 18 U.S.C. § 3553(a)(2)(A)-(B). Having reviewed the entire record, however, I am unconvinced the district court meant "just punishment" for making, and conspiring to make, false statements to an FBI agent when it described Richart's 120-month sentence as the "punishment that she deserves." Rather, I am of the opinion the court imposed the sentence it did to supplant what it perceived to be an inadequate state sentence for a second-degree murder. But Richart was before the district court awaiting sentencing for her federal offenses. She was not before the court to be sentenced, for the second time, for her

-30-

state conviction. Accordingly, by fixating on its perceived inadequacy of Richart's state sentence–a factor not listed in section 3553(a)–the district court gave significant weight to an improper factor and, thus, abused its discretion. See United States v. Walters, 643 F.3d 1077, 1079 (8th Cir. 2011) (stating a district court abuses its discretion if it gives significant weight to an improper factor); see also United States v. Green, 436 F.3d 449, 456-57 (4th Cir. 2006) (recognizing a sentencing court's decision to depart from the Guideline range must be based on the factors listed in section 3553(a)). Moreover, even if the district court properly considered the state conviction under the guise of "the nature, circumstances, and seriousness of Richart's offense," see ante 19-20 (citing 18 U.S.C. § 3553(a)(1), (2)(A)), I would still conclude the court engaged in the type of unreasonable weighing we ought not tolerate by giving the state conviction and sentence too much weight. See, e.g., United States v. Givens, 443 F.3d 642, 646 (8th Cir. 2006) (holding a sentence unreasonable where the sentencing court gave "too much weight" to the defendant's history and characteristics" and gave "not enough [weight] to the other portions of section 3553(a)").

It is our responsibility to correct sentencing mistakes when they occur. Rita, 551 U.S. at 354; see also Kane, 639 F.3d at 1136 ("If anything remains of substantive reasonableness review in the court of appeals, our court cannot ignore its duty to correct the weighing errors in this case."). Because under the totality of the circumstances and on the record before us I would find Richart's 120-month sentence substantively unreasonable, I would vacate the sentence and remand for resentencing.

_____