# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1346

———————————————

United States of America

*Plaintiff - Appellee*

v.

Reyes O. Campos

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: February 8, 2016
Filed: March 22, 2016

——————————

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

——————————

RILEY, Chief Judge.

Three Kansas City, Missouri, police officers encountered Reyes Campos after they received a report that a man might need medical attention. The officers found Campos lying on the sidewalk next to a fallen bicycle. Campos was acting incoherently. When an officer righted Campos's bicycle, an unzipped bag attached to the handlebars came open, revealing two firearms and drug paraphernalia. The officers ascertained that Campos was a convicted felon and arrested him for being a

felon in possession of a firearm, see 18 U.S.C. §§ 922(g)(1), 924(a)(2). Campos unsuccessfully moved to suppress the firearm and drug evidence. Campos conditionally pled guilty and was sentenced to 100 months imprisonment and three years supervised release.

Campos challenges the district court's denial of his motion to suppress the evidence found in the bag and its imposition of a condition on Campos's supervised release that he obtain no additional tattoos. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's denial of Campos's suppression motion and affirm as modified the tattoo condition of his supervised release.

## I. BACKGROUND[1]

On March 6, 2013, Kansas City Police Officers Phelps, Gaddy, and Wheeler responded to a call "to investigate the need for an ambulance." Officer Phelps arrived on the scene first, where he found Campos lying on the sidewalk next to a fallen bicycle with a bag attached to it. Two women were standing nearby. Officer Phelps approached Campos to determine if he needed assistance. Campos stated he did not need medical attention, but he was behaving incoherently and Officer Phelps suspected he was under the influence of drugs. Campos stated his name was Michael, but could not or would not provide any additional identifying information. Believing Campos was under the influence of some narcotic and needed medical attention, Officer Phelps handcuffed Campos and frisked him. No weapons or contraband were found. Officers Gaddy and Wheeler arrived.

Campos's bicycle was lying "on a sidewalk in a residential neighborhood" where "walkers and joggers" were present. Officer Phelps needed to move the

---

[1]Campos has not objected to the district court's factual findings, so we recite the facts as found by the district court. See, e.g., United States v. Rodriguez, 484 F.3d 1006, 1010-11 (8th Cir. 2007).

bicycle "because it was impeding pedestrian traffic," and if Campos were taken to the hospital, the officers would "take custody of [Campos's] bicycle." Officer Phelps told Campos, "I'm going to go check your bag, ok?" According to Officer Phelps, he hoped to locate Campos's identification.

As Officer Phelps righted the bicycle, the unzipped bag attached to the handlebars fell open. Once the bag was open, Officer Phelps, without touching the bag, could see there was a gun inside. Upon removing the gun, Officer Phelps discovered another gun underneath it. Beneath the second gun was a "digital scale with residue and a syringe containing residue and blood."

Meanwhile, Campos finally told Officer Gaddy his name and date of birth. The officers "ran this information through dispatch" whereupon they were advised Campos "was on supervision for a sexual offense." Once the officers confirmed Campos was a convicted felon, they arrested him. Campos then stated he was in pain and needed to go to the hospital. At the hospital, a nurse found a substance later determined to be methamphetamine in Campos's pants and turned it over to Officer Gaddy.

Campos was indicted on one count of being a felon in possession of a firearm, see 18 U.S.C. §§ 922(g)(1), 924(a)(2). Campos then moved "to suppress all evidence and testimony relating to such evidence that was obtained in violation of [his] rights under the Fourth and Fourteenth Amendments to the U.S. Constitution." Campos argued the evidence was obtained unlawfully because "[t]he officers had no reasonable suspicion that [he] was engaged in criminal activity." Campos asserted Officer Phelps conducted an "unreasonable search" by moving his bicycle "[b]ecause this type of physical manipulation of one's personal effects is aimed precisely at discerning what one has attempted to preserve as private."

-3-

In the district court's view, during Officer Phelps's interaction with Campos, "facts became known to Officer Phelps that provided him with a reasonable, articulable suspicion that . . . Campos may have been engaged in criminal activity," justifying a search of Campos's person. See Terry v. Ohio, 392 U.S. 1, 27 (1968); Kansas City, Mo. Code of Ordinances §§ 70-302(a), 70-687 (prohibiting the operation of a vehicle, including a bicycle, while under the influence of drugs). The district court further concluded Officer Phelps did not "search" Campos's bag—once Officer Phelps moved the bicycle, the bag opened, and the first gun was in plain view in a public area. See Payton v. New York, 445 U.S. 573, 587 (1980). The district court explained, "the incriminating character of a gun in the unzipped bag of an individual believed to be high on some type of narcotic was immediately apparent to Officer Phelps and . . . Officer Phelps had a lawful right to access the gun and make it safe." (Footnotes omitted).

The district court also noted Officer Phelps needed to move Campos's bicycle "because it was impeding pedestrian traffic." See Kansas City, Mo. Code of Ordinances § 70-696(b) ("A bicycle parked on a sidewalk shall not impede . . . pedestrian . . . traffic."). Observing even if the bicycle had not been blocking the sidewalk, the officers would have had to move the bicycle upon transporting Campos to the hospital, the district court denied Campos's motion to suppress.

Several months later Campos conditionally pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), preserving his suppression issue. The district court sentenced Campos to 100 months imprisonment and three years of supervised release. One condition of Campos's supervised release was that he "not obtain additional tattoos while incarcerated or on supervised release." Campos appeals the district court's denial of his motion to suppress and the imposition of the special condition prohibiting tattoos.

## II.  DISCUSSION

### A.  Suppression Motion

We review the district court's denial of a motion to suppress de novo.  See United States v. Wheat, 278 F.3d 722, 725 (8th Cir. 2001).

Campos argues the district court erred by denying his suppression motion because the officers located his weapons, drugs, and paraphernalia after conducting a search "in violation of the Fourth Amendment of the United States Constitution." According to Campos, "[t]he reason Officer Phelps was able to see the contents of the bag was because he manipulated the bag while it was on the bike," which Campos asserts "constituted an unreasonable search of his personal effects."  Citing Arizona v. Gant, 556 U.S. 332, 335 (2009), Campos analogizes his situation to that of a motor vehicle search, stating the "[o]fficers lacked reasonable suspicion to conduct an investigatory search of [his] bag after he was handcuffed and away from the bag" because "the Constitution does not authorize a vehicle search incident to arrest after the arrestee has been secured and cannot access the interior of the vehicle."

We agree with the government that Officer Phelps's movement of the bicycle under the unique circumstances of this case did not constitute a search and thus did not implicate Campos's Fourth Amendment rights.  As the government explains, "Campos's appeal on this point boils down to the discrete issue of whether the movement of his bicycle by police, in and of itself, violated Campos's Fourth Amendment rights."  As the district court explained, Officer Phelps needed to move Campos's bicycle because it was impeding pedestrian traffic, in violation of city ordinance.  See Kansas City, Mo. Code of Ordinances § 70-696(b).  Although Officer Phelps incidentally caused the bag to move by picking up the bicycle, the district court did not find that Officer Phelps directly manipulated the bag physically by opening it, squeezing it, or touching it in any way.  Once the bicycle was righted and the unzipped bag came open, Campos's firearm was in plain view.  "The seizure of property in plain view involves no invasion of privacy and is presumptively

-5-

reasonable, assuming that there is probable cause to associate the property with criminal activity." Payton, 445 U.S. at 587. Because Officer Phelps did not conduct a search, but rather saw Campos's firearm in plain view in a public area, we affirm the district court's denial of Campos's suppression motion.

### B.      Conditions of Supervised Release

We review the imposition of conditions upon supervised release for abuse of discretion. See United States v. Simons, 614 F.3d 475, 478 (8th Cir. 2010).

> District courts have "wide discretion" to impose conditions of supervised release so long as they are "reasonably related" to (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the deterrence of criminal conduct; (4) the protection of the public from further crimes of the defendant; and (5) the defendant's educational, vocational, medicinal, or other correctional needs.

United States v. Muhlenbruch, 682 F.3d 1096, 1102 (8th Cir. 2012) (internal citations omitted) (quoting United States v. Richart, 662 F.3d 1037, 1056 (8th Cir. 2011)). Conditions of supervised release must "involve[] no greater deprivation of liberty than reasonably necessary for the purposes set forth in § 3553(a)" and must be "consistent with any pertinent policy statements issued by the United States Sentencing Commission." United States v. Mefford, 711 F.3d 923, 926 (8th Cir. 2013); see also 18 U.S.C. § 3553(a) (listing "[f]actors to be considered in imposing a sentence").

Campos argues the district court's prohibition on new tattoos is not reasonably related to his offense of being a felon in possession of a firearm, the deterrence of criminal conduct, the protection of the public, or the furtherance of his correctional needs. Campos also declares "his right to get and keep tattoos should be protected by the First Amendment."

The government replies that "any additional tattoos, due in part to their excessive cost, would provide a hindrance to Campos's societal rehabilitation" because the cost of the tattoos could interfere with his ability to pay for court-ordered "substance abuse and mental health counseling programs." The government asserts the condition "involves no greater deprivation of liberty than reasonably necessary" because "Campos need only refrain from acquiring tattoos for a period of three years after release from prison."

We disagree. The prohibition on this one particular expenditure hardly is related to Campos's "educational, vocational, medicinal, or other correctional needs," and has no connection to the other § 3553(a) sentencing factors.[2] Muhlenbruch, 682 F.3d at 1102. We therefore modify condition seven of the "Additional Conditions of Supervised Release" to remove the words "or on supervised release."[3]

## III.  CONCLUSION

The district court's denial of Campos's motion to suppress is affirmed. We affirm the district court's tattoo condition as modified.

_____

[2]Because we conclude this condition on Campos's supervised release does not comport with the "purposes set forth in § 3553(a)," we need not consider Campos's argument that the condition violates his rights under the First Amendment. See, e.g., Buehrle v. City of Key West, ___ F.3d ___, ___, No. 14-15354, 2015 WL 9487716, at *2-3 (11th Cir. 2015) (characterizing tattoos as artistic expression protected by the First Amendment).

[3]We affirm the condition that Campos not get any new tattoos while in prison because Bureau of Prisons regulations prevent Campos from obtaining tattoos while incarcerated. See 28 C.F.R. § 541.3(a)(228); cf. Thunderbird v. Lampert, 74 F. App'x 835, 835 (9th Cir. 2003) (upholding regulation because "any infringement on Thunderbird's speech and expression caused by the prison's regulation of . . . books containing transferable tattoos, was reasonably related to legitimate penological interests").